United States Court of Appeals,

Eleventh Circuit.

Nos. 94-4611, 94-5027.

In re SOUTHEAST BANKING CORPORATION, Debtor.

William A. BRANDT, Jr., as Trustee of Southeast Banking Corporation, Plaintiff-Appellant,

v.

Florence S. BASSETT, as Personal Representative of the Estate of Harry Hood Bassett, Donald N. Boyce, Joseph A. Boyd, M. Anthony Burns, Edward D. Duda, et al., Defendants-Appellees.

FEDERAL DEPOSIT INSURANCE CORPORATION, as Receiver for Southeast Bank, N.A., Intervenor-Plaintiff,

v.

William A. BRANT, Jr., as Trustee of Southeast Banking Corporation, Florence S. Bassett, as Personal Representative of the Estate of Harry Hood Bassett, et al., Intervenors-Defendants.

William A. BRANDT, Jr., as Trustee of Southeast Banking Corporation, derivatively and on behalf of the Federal Deposit Insurance Corporation as receiver of Southeast Bank, N.A. and Southeast Bank, West Florida, Plaintiff-Appellant,

v.

Florence S. BASSETT, as Personal Representative of the Estate of Harry Hood Bassett, Donald N. Boyce, Joseph A. Boyd, et al., Defendants-Appellees.

Nov. 30, 1995.

Appeals from the United States District Court for the Southern District of Florida. Nos. 93-1829-CIV-EBD, 92-1600-CIV-EBD(SMA), Sidney M. Aronovitz, Judge.

Before HATCHETT and CARNES, Circuit Judges, and OWENS[*], District Judge.

CARNES, Circuit Judge:

This is a consolidated appeal from two district court orders

---

[*]Honorable Wilbur D. Owens, U.S. District Judge for the Middle District of Georgia, sitting by designation.

dismissing certain averments brought by a Chapter 7 bankruptcy trustee on behalf of a bank holding company against former directors and officers of the holding company and its subsidiary bank.

In the first case, No. 94-4611, the district court dismissed some averments in the complaint on the ground that they constitute a derivative action which can be asserted only by the Federal Deposit Insurance Corporation, as receiver and successor in interest to the holding company's subsidiary bank. The district court dismissed other averments as barred by the statute of limitations, and dismissed the complaint in its entirety insofar as it concerns two of the defendants. The district court directed entry of final judgment on the dismissed averments pursuant to Fed.R.Civ.P. 54(b). As to that case, we hold that we lack jurisdiction to review the statute of limitations ruling because it was not a final judgment properly subject to Rule 54(b) certification. For the same reason, we do not have jurisdiction to review the district court's dismissal of the averments that it held constitute a derivative action. We do, however, have jurisdiction over the final judgment dismissing the entire complaint insofar as it concerns two of the defendants, and we reverse that judgment.

In the second case, No. 94-5027, a forthright derivative action, the district court dismissed the trustee's entire complaint, holding that it is collaterally estopped by a holding in the first case. We have jurisdiction to review the judgment in the second case, and we affirm it.

## I. BACKGROUND

A. The Bankruptcy Proceedings

Southeast Banking Corporation ("the holding company") is a bank holding company incorporated under the laws of the State of Florida. It is the holding company for Southeast Bank, N.A. ("the subsidiary bank"), which was placed in receivership by the FDIC in September of 1991. Two days after that happened, the holding company filed a voluntary petition for relief under Chapter 7 of the Bankruptcy Code, 11 U.S.C. § 101, *et seq.,* in the United States Bankruptcy Court for the Southern District of Florida. William J. Brandt, Jr., is the trustee in bankruptcy of the holding company.

B. The Direct Action Litigation—Case No. 94-4611

In June of 1992 the trustee filed, on behalf of the holding company, a complaint in the district court against eighteen former directors and officers of the holding company, claiming that they had consciously disregarded their duties to the holding company and that they had acted contrary to the holding company's best interest in order to entrench themselves as directors and officers. With one exception, the defendants also were directors and officers of the subsidiary bank. In July of 1993, the district court held that the complaint alleged primarily derivative claims arising out of the defendants' conduct in managing the subsidiary bank, instead of direct claims arising out of the defendants' conduct as directors and officers of the holding company. *In re Southeast Banking Corp.,* 827 F.Supp. 742 (S.D.Fla.1993). The court further held that, pursuant to the Financial Institutions Reform, Recovery and Enforcement Act ("FIRREA"), 12 U.S.C. § 1821(d)(2)(A)(i) (1988) all such derivative claims belong exclusively to the FDIC as receiver

and successor in interest to the shareholders of the subsidiary bank, and therefore dismissed the complaint. *Id.* The trustee filed a first amended complaint, which the district court again dismissed, this time on the ground that it did not contain sufficient specific factual allegations to comply with Fed.R.Civ.P. 8.

The trustee then filed a second amended complaint alleging the following: (1) the defendants refused to consider in good faith any merger involving the holding company that would jeopardize their positions as directors and officers; (2) the defendants directed the holding company to acquire several Florida banks without regard to whether such acquisitions were in its best interest, in order to make it too large for a hostile takeover; (3) the defendants distributed dividends on the holding company's common stock against the best interest of the holding company and its shareholders, in order to cover up the defendants' mismanagement of the holding company; and (4) the defendants directed and caused a precipitous increase in lending by the subsidiary banks in order to make the holding company too large for a hostile takeover. The defendants moved, under Fed.R.Civ.P. 12(b)(6), to dismiss the second amended complaint on a number of grounds, including their contentions that the statute of limitations bars many of the averments, and that any action related to the lending practices of the subsidiary bank can be asserted only by the FDIC as receiver and successor in interest to the shareholders. *In re Southeast Banking, Corp.,* 855 F.Supp. 353, 356 (S.D.Fla.1994).

In May of 1994, the district court denied the motion to dismiss as to most of the second amended complaint. However, it did dismiss the averments that the defendants improperly directed the subsidiary bank's lending practices and all of the averments relating to conduct that occurred before September 20, 1987, the date beyond which the action is barred by the statute of limitations, according to the district court. *Id.* at 358. The court also dismissed the entire complaint insofar as it concerns two of the defendants, James J. Forese and Charles D. Towers, Jr., who had been on the holding company Board of Directors only a short period of time. *Id.* The district court directed entry of a final judgment on the dismissed claims pursuant to Fed.R.Civ.P. 54(b), expressly determining that there is no just reason for delay. *Id.* at 361. The trustee has appealed the district court's judgments, and that appeal is our case No. 94-4611.

C. The Derivative Action Litigation—Case No. 94-5027

In September of 1993, the trustee filed a "First Amended Verified Derivative Complaint" against virtually the same defendants,[1] alleging that they had consciously disregarded their duties as directors and officers of the subsidiary bank and of another of the holding company's subsidiary banks. The district court dismissed the derivative complaint on grounds that it is collaterally estopped by the prior holding in the direct action that such derivative claims can only be asserted by the FDIC. The trustee's appeal of that judgment is our case No. 94-5027.

---

[1]Appellee Alfonso Fanjul, Jr., is a defendant in the direct action and not in the derivative action. With that one exception, the defendants are the same in both cases.

## II. THE DIRECT ACTION LITIGATION, No. 94-4611

A. Appellate Jurisdiction

Initially, we must determine if we have jurisdiction to hear the appeal in case No. 94-4611, the direct action litigation. None of the district court's decisions that the trustee appeals are orders relating to injunctions, *see* 28 U.S.C. § 1292(a), or orders as to which permission to appeal has been granted pursuant to 28 U.S.C. § 1292(b), nor is there any contention that we have jurisdiction on any basis other than Rule 54(b). The trustee contends that we have appellate jurisdiction because of the district court's certification under Federal Rule of Civil Procedure 54(b), which provides, in pertinent part:

> When more than one claim for relief is presented in an action, whether as a claim, counterclaim, cross-claim, or third-party claim, or when multiple parties are involved, the court may direct the entry of final judgment as to one or more but fewer than all of the claims or parties only upon an express determination that there is no just reason for delay and upon an express direction for the entry of judgment.

A district court's Rule 54(b) determinations, which directly affect the scope of our appellate jurisdiction, are not conclusive on us. *Pitney Bowes, Inc. v. Mestre,* 701 F.2d 1365, 1369 (11th Cir.), *cert. denied,* 464 U.S. 893, 104 S.Ct. 239, 78 L.Ed.2d 230 (1983). Instead, we review such determinations to see if they fit within the scope of the rule. *Id.;* *Braswell Shipyards, Inc. v. Beazer East, Inc.,* 2 F.3d 1331, 1336 (4th Cir.1993).

### 1. The Standard of Review

We apply a two-pronged test to review a district court's Rule 54(b) certification. *Curtiss-Wright Corp. v. General Electric Co.,* 446 U.S. 1, 10, 100 S.Ct. 1460, 1466, 64 L.Ed.2d 1 (1980). First,

we scrutinize the district court's evaluation of the interrelationship of the claims, in order to decide whether the district court completely disposed of one or more claims, which is a prerequisite for an appeal under the rule. *Id.; see also Howard v. Parisian, Inc.,* 807 F.2d 1560, 1566 (11th Cir.1987); *Pitney Bowes,* 701 F.2d at 1369. Our scrutiny under this first prong approaches *de novo* review, because we have a duty to "scrutinize" the district court's determination in order to ensure that limits on our jurisdiction are observed; however, there is some room for deference particularly where the district court has made its reasoning clear. *See Curtiss-Wright,* 466 U.S. at 10, 100 S.Ct. at 1466 (proper role of court of appeals is to ensure that the district court's Rule 54(b) related conclusions and assessments are juridically sound and supported by the record).

When a district court is persuaded that Rule 54(b) certification is appropriate, the district court should support its conclusion by clearly and cogently expressing its reasoning and the factual and legal determinations supporting that reasoning. *Cf. Explosives Supply Co. v. Columbia Nitrogen Corp.,* 691 F.2d 486, 486 (11th Cir.1982) (observing that the district court is not required, in every case, to express its reasoning, although "the desirability of such a statement of reasons is obvious since an explanation would assist appellate courts in reviewing district court decisions."); *Braswell,* 2 F.3d at 1336 ("The expression of clear and cogent findings of fact is crucial."). As other courts have recognized, being explicit about its reasoning not only assists the district court itself in analyzing the interrelatedness of the

claims and the equities of the situation, but also facilitates appellate review of a Rule 54(b) certification. *Id.; Allis-Chalmers Corp. v. Philadelphia Elec. Co.,* 521 F.2d 360, 364 (3d Cir.1975). *Curtiss-Wright* directs us to "scrutinize" the district court's reasoning about the interrelationship of the claims, 466 U.S. at 10, 100 S.Ct. at 1466, and in doing that it certainly helps if we know what that reasoning is.

We are sensitive to the burdens placed on district courts, but they have an experiential advantage over this Court in parsing out claims at the pretrial stage. If the district court does not explain itself, as is the case here, we do not get the benefit of its experience and its reasoning. In such a case, we do the best we can without that assistance, but any deference we might otherwise afford such a ruling will be nullified by the absence of a meaningful explanation. *Braswell,* 2 F.3d at 1336 ("[N]umerous courts have held that where the district court's Rule 54(b) certification is devoid of findings or reasoning in support thereof, the deference normally accorded such a certification is nullified.").

As to the second prong of the inquiry under the rule—whether there is any just reason for delay—we accord the district court's determination considerably more deference than we do its first prong determination. *Curtiss-Wright,* 466 U.S. at 10, 100 S.Ct. at 1466. We will not disturb the district court's assessment that there is "no just reason for delay" unless the court's conclusion was "clearly unreasonable," *id.,* because "the task of weighing and balancing the contending factors is peculiarly one for the trial

judge, who can explore all the facets of a case," *id.* at 12, 100 S.Ct. at 1467.

## 2. The Requirement of Separability for Rule 54(b) Certification

A judgment properly may be certified under the terms of Rule 54(b) only if it possesses the requisite degree of finality. That is, the judgment must completely dispose of at least one substantive claim. *Howard,* 807 F.2d at 1566. A partial or interlocutory adjudication of a claim cannot be certified merely because it is labelled a "partial summary judgment" or labelled a 12(b)(6) dismissal, even if the requisite "express determination" has been made. *Cf. id.* ("Because an order denying a jury demand does not dispose entirely of a claim but leaves the claim pending for a bench trial, it is an interlocutory order. Therefore, the order was not subject to certification under Rule 54(b)." (citation omitted)).

The purpose of Rule 54(b) is to codify the historic practice of "prohibit[ing] piecemeal disposition of litigation and permitting appeals only from final judgments," except in the "infrequent harsh case" in which the district court properly makes the determinations contemplated by the Rule. Fed.R.Civ.P. 54(b) advisory committee's note to 1946 amendment; *Vann v. Citicorp Sav. of Ill.,* 891 F.2d 1507, 1509-10 (11th Cir.1990). A district court has the discretion to certify a judgment for immediate appeal only when it is "final" within the meaning of Rule 54(b), which means that the judgment disposes entirely of a separable claim or

dismisses a party entirely. *Pitney Bowes,* 701 F.2d at 1369 n. 8.[2]

Here, we are concerned with whether the district court disposed entirely of one or more separable claims. To determine this, we must delineate the point at which one claim parts company with another, which often is a difficult task. As one authority has noted, courts have frequently observed that the line between deciding one of several claims and deciding only part of a single claim is very obscure, and have on too few occasions articulated the basis for their decisions in this area. 10 Charles A. Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice & Procedure § 2657, at 67 (2d ed. 1983) (hereinafter Wright); *see also* James Wm. Moore, *et al.,* Moore's Federal Practice ¶ 54.33[2], at 54-197 (2d ed. 1995) (hereinafter Moore) ("With the doctrine thus in ferment it is difficult to state any reliable limits for identifying a distinct "claim for relief.' "). This Court has cautioned against an inflexible approach to jurisdictional questions. *Vann,* 891 F.2d at 509; *see also Curtiss-Wright,* 446 U.S. at 10-11, 100 S.Ct. at 1466-67 ("[B]ecause the number of possible situations is large, we are reluctant either to fix or sanction narrow guidelines for the district courts to follow."); *In re Martin Bros. Toolmaker, Inc.,* 796 F.2d 1435, 1437 (11th Cir.1986). Nevertheless, there are certain guidelines that we apply.

---

[2]Certification should not, however, be routinely granted in any event. *See Curtiss-Wright,* 466 U.S. at 8, 100 S.Ct. at 1465 ("Not all final judgments on individual claims should be immediately appealable, even if they are in some sense separable from the remaining unresolved claims."). It should be granted only if there exists some danger of hardship or injustice through delay, that would be alleviated by immediate appeal. *See Vann,* 891 F.2d at 1509-10.

Claims are separable when there is more than one possible recovery, 10 Wright, § 2657, at 67, or if "different sorts of relief" are sought, *see Seatrain Shipbuilding Corp. v. Shell Oil Co.,* 444 U.S. 572, 580-81 & n. 18, 100 S.Ct. 800, 805-06 & n. 18, 63 L.Ed.2d 36 (1980). When either of these circumstances exists, claims are "separately enforceable" and subject to Rule 54(b) certification even if they arise out of a single transaction or occurrence. *See Cold Metal Process Co. v. United Engineering & Foundry Co.,* 351 U.S. 445, 452, 76 S.Ct. 904, 908, 100 L.Ed. 1311 (1956); *Sears, Roebuck & Co. v. Mackey,* 351 U.S. 427, 436-37 & n. 9, 76 S.Ct. 895, 900-01 & n. 9, 100 L.Ed. 1297 (1956). However, the same is not true if the claims for relief would not permit more than one possible recovery; if the possible recoveries under various portions of the complaint are mutually exclusive, or substantially overlap, then they are not separable claims. 10 Wright, § 2657, at 67. That situation exists when the plaintiff presents more than one legal theory, but will be permitted to recover on only one of them. In such a case, there is only a single inseparable claim for relief for purposes of Rule 54(b). *Id.* at 69.

These limits on Rule 54(b) certifications are jurisdictional and they are informed by the practical implications of reading the rule broadly. *See Curtiss-Wright,* 466 U.S. at 8-10, 100 S.Ct. at 1464-66; *Minority Police Officers Ass'n of South Bend v. City of South Bend, Ind.,* 721 F.2d 197, 200 (7th Cir.1983) ("[W]e must delve deeper before deciding that this is a case of genuinely separate claims under Rule 54(b).... [because] [t]here are grave

practical objections to reading the rule broadly."). The caseload of the federal courts of appeals has grown faster than that of any other component of the federal judiciary. *Minority Police Officers,* 721 F.2d at 200. A liberal construction of Rule 54(b) has a tremendous potential to increase our caseload still more rapidly, because of the rule's natural tendency to multiply appeals in a single case. *Id.* This case is a good example: even if we were to decide each of the issues raised in the present appeals, we are quite likely to have to decide one or more additional appeals in these cases in the future. Although "each appeal in a series of multiple appeals in the same case should be easier to decide than would be an appeal from a final judgment disposing of the entire lawsuit, the greater simplicity will usually be outweighed by the burden on this court of having to reacquaint itself again and again with at least the basic facts of the case." *Id.* Thus, when we consider whether claims are separate, we will keep in mind the purpose and practical implications of Rule 54(b).

B. The District Court's Rulings

The district court dismissed portions of the complaint in the direct action as to all the defendants for two reasons: (1) some of the allegations are barred by the statute of limitations; and (2) some of the allegations are derivative in nature and can be asserted only by the FDIC as statutory receiver and successor in interest to the shareholders of the subsidiary bank. The court also dismissed the complaint in its entirety as to two of the defendants, Forese and Towers. We address each of the court's rulings in turn to decide whether they were properly certified

under Rule 54(b).

## 1. The Statute of Limitations Ruling

We begin with the district court's action certifying its statute of limitations ruling as a final judgment. The trustee's complaint presented four categories of averments:

(1) the defendants refused to consider in good faith any merger that would jeopardize their positions as directors and officers;

(2) the defendants directed the holding company to acquire several Florida banks without regard to whether such acquisitions were in its best interest, in order to make it too large for a hostile takeover;

(3) the defendants distributed dividends on the holding company's common stock against the best interest of the holding company and its shareholders, in order to cover up the defendants' mismanagement of the holding company; and

(4) the defendants directed and caused a precipitous increase in lending by the holding company's subsidiary banks, in order to make it too large for a hostile takeover.

Even if we assume—contrary to reality—that the four categories of averments in the complaint are separable claims for Rule 54(b) purposes, although the statute of limitations ruling cuts across two of them it did not dispose entirely of any one of the four categories of averments. *Minority Police Officers,* 721 F.2d at 201 (holding that district court's ruling that statute of limitations barred liability for acts of discrimination committed more than two years before the complaint was filed was not a final judgment under

Rule 54(b), because claims within the limitations period remained for trial).  None of the four categories of averments can be split into separable claims by dividing the averments into time periods. For example, as to the first category of averments, the relief the complaint seeks for wrongful failure to consider a merger can be recovered only once.  Relief cannot be recovered for the wrongful failure to consider merger in 1986, and again for 1987, and so forth.  *Cf. Schexnaydre v. Travelers Ins. Co.*, 527 F.2d 855, 856 (5th Cir.1976) (using the term "multiplicity" instead of "separability," and holding that, "[t]rue multiplicity is not present where, as here, the plaintiff merely presents alternative theories, drawn from the law of the same sovereign, by which the same set of facts might give rise to a single liability.").

The same is true of the only other category of averments affected by the statute of limitations ruling.  The second category addresses a continuing course of improper conduct in the adoption and maintenance of "a policy of acquiring additional banks and thrifts for the purpose of making [the holding company] too large for any other bank holding company to acquire."  The trustee can not recover repeatedly for the defendants' adoption or maintenance of a single improper policy.

Because the district court's statute of limitations ruling did not dispose of separable claims, it was not a final judgment within the meaning of Rule 54(b).  Instead, the ruling was merely an interlocutory order, which cannot be transformed under Rule 54(b) into a final order for purposes of expediting an appeal.  *Howard*, 807 F.2d at 1566;  *see also Wheeler v. American Home Products*

*Corp.*, 582 F.2d 891, 896 (5th Cir.1977). Accordingly, we lack jurisdiction to review it. We turn now to the district court's ruling about the portion of the complaint concerning the subsidiary bank's lending practices.

## 2. The Subsidiary Bank Lending Practices Ruling

The trustee alleged that the defendants caused the subsidiary bank to increase its lending, against the best interest of the subsidiary bank, and thus against the best interest of the holding company. The district court determined that these allegations stated a derivative action on behalf of the subsidiary bank and that, under FIRREA, any such derivative action belonged exclusively to the FDIC as successor in interest to the shareholders of the subsidiary bank. The court therefore dismissed the portions of the complaint that concerned the subsidiary bank's lending practices.

Although the portion of the complaint concerning the subsidiary bank's lending practices may appear at first glance to be distinct from other portions of the complaint, it is actually substantially interrelated with the averments about the wrongful failure to consider a merger. The point of the subsidiary bank lending practices averments is that the defendants specifically directed the subsidiary bank to make "bad loans," which cost the subsidiary bank money, and in turn, by way of pass-through, hurt the holding company. The relief sought is intertwined with and inseparable from the relief sought for the failure to consider merger with another holding company, because the failure to consider merger averments, if successful, will foreclose at least some—if not all—of the relief sought for the improper lending

practices.  If that were not true, there would be double recovery for some of the same injury.  The holding company would recover twice because its relief on the failure to consider merger averments would compensate it for all proximately caused damage arising after the failure to merge, which would include at least some of the relief sought on the subsidiary bank lending practices averments.  Stated differently, the relief for failure to consider merger would presumably compensate the holding company for all damages from the continued service of the directors beyond the date on which a merger should have occurred, and those damages would include any damages flowing from all the defendants' improper conduct that took place after their failure to merge the holding company.  Thus, the lending practices damages would overlap to some extent with the damages on the failure to consider merger averments.[3]  This being so, these two categories of averments are not separable in the Rule 54(b) sense.  *See* 10 Wright, § 2657, at 67 (observing that claims are separable when there is more than one possible recovery and the recoveries are not mutually exclusive); *General Acc. Ins. Co. v. J.K. Chrysler Plymouth Corp.,* 139 F.R.D. 585, 587 (E.D.N.Y.1991) (same).

Even if recovery on the failure to consider merger averments

---

[3]The district court's statute of limitations ruling truncated, or eliminated some of, both the failure to consider merger averments and the subsidiary bank lending practices averments.  Thus, to the extent each category of averments is not time-barred, they may well accrue on the same date, September 20, 1987.  If so, and the trustee is successful on the failure to consider merger claim, *all* of the relief sought on the subsidiary bank lending practices averments will become a component of the relief on the failure to consider merger averments.  In fact, the failure to consider merger averments would swallow (or foreclose) all the others in the complaint.

would not preclude, in whole or in part, a separate recovery on the lending claim, we might well reach the same result we reach here. The strong policy against piecemeal litigation, which informs the determination of separability and "requisite finality" for Rule 54(b) purposes, supports our result. *See Curtiss-Wright,* 466 U.S. at 8-10, 100 S.Ct. at 1464-66; *Minority Police Officers,* 721 F.2d at 200 (recognizing the practical affect of piecemeal appeals on appellate court caseloads). An underlying theme of managerial entrenchment runs through the entirety of the trustee's complaint, and ties the averments together. The facts and any evidence in terms of intent, as well as the law relating to breach of fiduciary duty, overlap considerably between the failure to consider merger averments and the subsidiary bank lending practices averments. If we were now to review the district court's ruling on the subsidiary bank lending practices, we would undoubtedly find ourselves dealing with much of the same issues, facts, and law again in a subsequent appeal after the final disposition of the case in the district court. *See, e.g., Curtiss-Wright,* 466 U.S. at 6-7, 100 S.Ct. at 1463-64 (affirming district court's Rule 54(b) certification in which the district court "found that certification would not result in unnecessary appellate review; that the claims finally adjudicated were separate, distinct, and independent of any of the other claims or counterclaims involved; that review of these adjudicated claims would not be mooted by any future developments in the case; and that the nature of the claims was such that no appellate court would have to decide the same issues more than once even if there were subsequent appeals."); *Explosives Supply,* 691

F.2d at 486-87 (affirming district court's certification of judgment when "the opinion of the lower court clearly shows the separability of the claims such that neither the same issues nor facts would be before the reviewing court more than once."). District courts should be conservative in exercising their Rule 54(b) discretion.

### 3. The Ruling Dismissing the Entire Complaint Insofar As It Concerned Defendants Forese and Towers

Certification of the district court's ruling dismissing the entire complaint insofar as it concerned Defendants Forese and Towers was within the district court's discretion because, without question, it was a "final judgment as to one or more but fewer than all ... the parties." Fed.R.Civ.P. 54(b). The district court directed the entry of final judgment and made an express determination that there is no just reason for delay. The language of the rule itself makes clear that certification was allowable under the first prong. As to the second prong, we can not say that the district court abused its discretion in determining that there is no just reason for delay. *Curtiss-Wright,* 446 U.S. at 10, 100 S.Ct. at 1466 (under the second prong of certification, "the decision to certify ... [is] left to the sound judicial discretion of the district court...., [which we review in] the interest of sound judicial administration." (quotation marks omitted)). We have jurisdiction to review the judgment, and we turn now to the merits.

The district court dismissed the complaint entirely insofar as it concerned Defendants Forese and Towers for two reasons.

First, the district court determined that the two defendants served relatively short tenures as directors of the holding company, and thus could not have been responsible for the activity alleged in the complaint.  However, the complaint does allege a continuing pattern of improper conduct, spanning a time period which includes the period Forese and Towers served as directors of the holding company.  At this stage of the litigation, on a motion to dismiss, it was inappropriate for the court to go beyond determining whether a claim has been pleaded against the defendants and speculate about what the evidence might show.  *Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90 (1974) ("The issue is not whether the plaintiff will ultimately prevail but whether a claimant is entitled to offer evidence to support the claims."); *Conley v. Gibson,* 355 U.S. 41, 45-46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957) ("In appraising the sufficiency of the complaint we follow, of course, the accepted rule that a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.") (footnote omitted).  The district court's apparent conclusion that Forese and Towers were not responsible for the policies of the Board, because of their short tenures, was premature.  The defendants will have an opportunity to move for summary judgment, which is the appropriate stage for the district court to make such a determination.

The district court's second reason for dismissing the complaint as against Forese and Towers was that the court had earlier ordered that when the trustee filed his second amended

complaint, he "allege with the greatest specificity those acts of defendants Forese and Towers for which Plaintiff claims said defendants are liable." *In re Southeast,* 855 F.Supp. at 358. The trustee responded by simply attaching to the second amended complaint four charts showing the terms of service of each defendant. The court held that the charts "hardly suffice to allege with any specificity, much less with "greatest specificity,' those acts for which defendants Forese and Towers are allegedly liable." *Id.* That is an accurate answer, but it is to the wrong question; the court applied the wrong standard.

The standard for notice pleading set forth in Fed.R.Civ.P. 8(a)(2) requires "a short and plain statement of the claim showing that the pleader is entitled to relief." We have held that:

> Before a court may dismiss a claim under Rule 12(b)(6), it must appear "beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Neither "notice pleading' requirements (Fed.R.Civ.P. 8(a)(2)) nor the standards which govern dismissals under Rule 12(b)(6) require a claimant to set out in detail the facts upon which he bases his claim. Pretrial procedures such as summary judgment (Fed.R.Civ.P. 56) and the motion for a more definite statement (Fed.R.Civ.P. 12(a)) are the appropriate devices to narrow the issues and disclose the boundaries of the claim or defense.

*Williams v. United Credit Plan of Chalmette, Inc.,* 526 F.2d 713, 714 (5th Cir.1976) (quoting *Conley v. Gibson,* 355 U.S. 41, 45-46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957)). In ordering the trustee to plead his claims against Forese and Towers "with the greatest specificity," the district court imposed a higher pleading standard upon the trustee than Rule 8(a)(2) allows. *See* Fed.R.Civ.P. 83 (requiring courts to reach decisions that are consistent with the rules).

Forese and Towers contend that the district court did not require the trustee to plead his allegations with more specificity than required by Rule 8(a)(2). They argue that the court only required that the trustee allege with the greatest specificity he could. The problem with their contention is that, for better or for worse, the Federal Rules of Civil Procedure do not permit district courts to impose upon plaintiffs the burden to plead with the greatest specificity they can. *E.g., Quality Foods de Centro America v. Latin American Agribusiness Dev. Corp.,* 711 F.2d 989, 995 (11th Cir.1983) ("[T]he alleged facts need not be spelled out with exactitude, nor must recovery appear imminent."). The trustee's complaint alleges Forese and Towers engaged in three of the four categories of improper conduct specified in the complaint during their tenures with the holding company.[4] Because the complaint satisfies the low pleading burden imposed by Rule 8(a)(2), the district court's dismissal was improper. *Id.* ("[T]he threshold of sufficiency that a complaint must meet to survive a motion to dismiss for failure to state a claim is exceedingly low."). Forese and Towers will have an opportunity to move for summary judgment at the appropriate time.[5]

_____

[4]The trustee does not seek to recover from Defendants Forese and Towers on the category of averments related to the holding company's acquisition of several Florida banks, against the best interest of the holding company, because that occurred before they joined the Board of Directors.

[5]Rule 8(a)(2) must be read in the context of Rule 11's prohibition on pleadings formed without reasonable inquiry under the circumstances. By filing the complaint in the first instance, the trustee has certified that his claims are warranted by existing law, or by a nonfrivolous argument for modification of existing law, and that his allegations and factual contentions have evidentiary support, or are likely to have evidentiary

## III. THE DERIVATIVE ACTION LITIGATION, No. 94-5027

After the district court held in the direct action litigation, discussed above, that the subsidiary bank lending practices action belongs exclusively to the FDIC, the trustee filed a "Verified Derivative Complaint" seeking to reassert on behalf of the holding company essentially the same action in another form. Following amendment of this derivative complaint, the defendants moved to dismiss, relying on several alternative grounds including the collateral estoppel effect of the prior order with respect to the subsidiary bank lending practices. The district court dismissed the derivative complaint in its entirety, under Fed.R.Civ.P. 12(b)(6), based upon collateral estoppel. Specifically, the district court found that: (1) the district court in the direct action litigation had determined that the FDIC had exclusive ownership of the subsidiary bank-related claims; (2) the issue of subsidiary bank-related claim ownership was actually litigated in the prior proceeding; (3) the ownership of those claims was critical to the determination in that proceeding; and (4) the trustee had had a full and fair opportunity to litigate the issue previously, having submitted numerous memoranda of law and

---

support after further investigation or discovery.

> If, after remand, the trustee persists in pursuing claims against Forese and Towers, and the district court ultimately determines he did so in bad faith, Rule 11 sanctions may be appropriate. If Rule 11 sanctions are levied, the district court will have discretion to levy them against the trustee and his counsel individually, rather than against the holding company. Fed.R.Civ.P. 11(c) ("[T]he court may ... impose an appropriate sanction upon the attorneys, law firms, or parties that have violated subdivision (b) or are responsible for the violation.").

having made two oral arguments on the issue in the direct action litigation.

Collateral estoppel bars relitigation of a previously decided issue when the parties are the same (or in privity) if the party against whom the issue was decided had a full and fair opportunity to litigate the issue in the earlier proceeding. *Allen v. McCurry,* 449 U.S. 90, 95, 101 S.Ct. 411, 415, 66 L.Ed.2d 308 (1980); *In re St. Laurent,* 991 F.2d 672, 675 (11th Cir.1993). The following elements must be established before collateral estoppel applies: (1) the issue at stake must be identical to the one decided in the prior litigation; (2) the issue must have been actually litigated in the prior proceeding; (3) the prior determination of the issue must have been a critical and necessary part of the judgment in that earlier decision; and (4) the standard of proof in the prior action must have been at least as stringent as the standard of proof in the later case. *St. Laurent,* 991 F.2d at 676; *Citibank v. Data Lease Financial Corp.,* 904 F.2d 1498, 1501 n. 6 (11th Cir.1990); *S.E.L. Maduro, Inc. v. M/V Antonio De Gastaneta,* 833 F.2d 1477, 1483 (11th Cir.1987).

The trustee argues that collateral estoppel is inapplicable because the issue of whether he could maintain a derivative action on behalf of the subsidiary bank was not previously decided in the direct action litigation. He contends that the only issue before the district court in the direct action litigation was whether the claims set forth in the trustee's complaint were direct claims or derivative claims. We disagree. The district court decided in the direct action that the complaint in that action stated a derivative

claim, *and* that for that reason it was barred by FIRREA. *In re Southeast,* 827 F.Supp. at 746 ("These allegations plead classic derivative claims which can only be asserted by the successor in interest to the Bank, the FDIC.").[6] In addition, the district court's conclusion that derivative actions can not be brought except by the FDIC was a critical part of the judgment in the prior litigation, satisfying the third element of the collateral estoppel test. Moreover, both the prior decision and this second one granted motions to dismiss the complaint—placing identical burdens on the trustee—and thus the fourth element was satisfied.

The remaining question involves the second element: whether the issue was "actually litigated." In the direct action litigation the trustee apparently chose to focus on whether the action was direct or derivative, and not on whether derivative actions belong exclusively to the FDIC. However, the defendants argued that the complaint asserted derivative claims, and that under FIRREA such derivative claims could be raised only by the FDIC. The trustee responded that he was asserting direct claims

---

[6]Although the district courts judgment in the prior case is not yet "final" in the sense that it is appealable, the trustee did not object in the district court, or in this Court, to the application of collateral estoppel on that ground. We therefore do not address that possible argument. *See, e.g., United States v. Hidalgo,* 7 F.3d 1566, 1569 n. 2 (11th Cir.1993) ("[T]his argument was not raised ... in the district court, was not addressed by the magistrate judge or ruled on by the district court, and was not raised in the statement of the issues or the argument sections of [his] brief to this Court. Therefore it is not properly before us."); *Hicks v. Harris,* 606 F.2d 65, 67 n. 3 (5th Cir.1979) ("Since this ground of attack on the trial court's order was not raised below, it cannot be considered on appeal."); *Prymer v. Ogden,* 29 F.3d 1208, 1213-14 (7th Cir.1994) (holding counsel's failure to object on the grounds that the elements of collateral estoppel were not met amounted to waiver of that argument).

belonging to the holding company and not to the shareholders of the subsidiary bank generally, or the FDIC. *In re Southeast Banking Corp.,* 827 F.Supp. at 745. Against that backdrop, the district court determined in the direct action litigation that that portion of the trustee's complaint pleaded "classic derivative claims which can only be asserted by the successor in interest to the Bank, the FDIC." *Id.* at 746. The court then dismissed the averments in question, stating, "By statute, the derivative claims are declared to be the claims belonging to the FDIC...." *Id.* at 749. Thus, the court squarely addressed the issue.

It appears the trustee may have, in the prior litigation, selected a litigation strategy he now regrets, placing all his eggs in the "direct, not derivative" basket. But his choice of that strategy will not prevent the application of collateral estoppel. *See* Moore, ¶ 0.441[2], at 523 ("If it has been determined in the former action, it is binding notwithstanding the parties litigant may have omitted to urge for or against it matters which, if urged, would have produced an opposite result.").

We affirm the district court's order dismissing the derivative action.

## IV. CONCLUSION

We DISMISS, for lack of jurisdiction, the appeals in case No. 94-4611 from the district court's ruling on the statute of limitations and its ruling that the averments related to the subsidiary bank's lending practices may be asserted only by the FDIC. We have jurisdiction over the district court's order in that same case dismissing the complaint entirely as against Defendants

Forese and Towers, and we REVERSE that decision and REMAND the case to the district court for further proceedings.  Additionally, we have jurisdiction over the appeal in case No. 94-5027, and we AFFIRM the judgment in that case.