[PUBLISH]

In the

# United States Court of Appeals

### For the Eleventh Circuit

_____

No. 21-14214

_____

RONDA SCOTT,

Plaintiff-Appellant
Cross Appellee,

*versus*

ADVANCED PHARMACEUTICAL CONSULTANTS, INC.,

Defendant-Appellee,

CENTURION OF FLORIDA, LLC,

Defendant-Appellee
Cross Appellant.

_____

Appeal from the United States District Court
for the Northern District of Florida
D.C. Docket No. 5:19-cv-00571-RH-MJF

_____

Before WILLIAM PRYOR, Chief Judge, and LUCK and MARCUS, Circuit Judges.

MARCUS, Circuit Judge:

At its simplest, this case is about whether Ronda Scott was retaliated against by her former employer, Advanced Pharmaceutical Consultants, Inc. ("APC"), and the company that contracted with her employer, Centurion of Florida, LLC ("Centurion") (together, "Defendants"), for engaging in protected activity. But, as it turns out, we are without power to decide that question because we lack jurisdiction to entertain this interlocutory appeal.

APC fired Scott in September 2018. Scott alleges it was because she reported to Centurion and APC that some of Centurion's prison pharmacies were logging Epclusa, a drug used to treat hepatitis C, as a narcotic even though it is not one, and because she complained about dangerous "staff turnover" contributing to a "complete system breakdown" in one prison. Scott claims that this activity was legally protected, so she sued Centurion and APC in the United States District Court for the Northern District of Florida in late December 2019. Her complaint alleged four counts: violations of the Florida Private Whistleblower Act ("FPWA") and

Florida Public Whistleblower Act ("FWA") against Centurion and APC, and violations of the False Claims Act ("FCA") and intentional interference with her advantageous business relations ("tortious interference") against Centurion.

Centurion and APC both moved for summary judgment on all counts. The district court granted summary judgment on three of them -- the FPWA, FWA, and FCA counts -- but denied summary judgment on the tortious interference count. Pursuant to Federal Rule of Civil Procedure 54(b), the district court directed the clerk to enter a final judgment on the three resolved counts, and it certified that the fourth count satisfied the requirements of 28 U.S.C. § 1292(b) for immediate interlocutory review, should either party file an appropriate application with this Court. We must now decide whether the district court's certification was proper as to Scott's direct appeal, and whether the requirements of 28 U.S.C. § 1292(b) have been met as to Centurion's cross appeal.

After careful review and with the benefit of oral argument, we conclude that the answer to both questions is no. We therefore dismiss the appeals for lack of appellate jurisdiction.

**I.**

Centurion contracted with the Florida Department of Corrections to supply health care services to inmates in some Florida prisons. The contract required Centurion to engage a subcontractor to "provide certain consultant pharmacy services" to those prisons. To fulfill this obligation, Centurion hired APC as an independent contractor.

Scott formerly worked for APC as a regional consultant pharmacist. Among other things, she oversaw the pharmacies in several Centurion-serviced prisons to ensure compliance with applicable laws, rules, and regulations. APC fired Scott on September 10, 2018. Scott alleges it was because she spoke about the serious conditions that she found at the prisons.

First, on May 16, 2018, Scott noted on Centurion's required Continuous Quality Improvement ("CQI") form that she observed a "complete system breakdown -- staff turnover." Scott explained that she made these comments to document her belief that licensed personnel were being replaced by unlicensed personnel in the pharmacy and that unlicensed personnel were performing tasks that could not be performed without a license. Scott also complained that inventory was not correct for certain medications and that some doses and documentation were missing, specifically for Epclusa, a medication used to treat hepatitis C. Scott testified that this visit was "probably the worst [she had] ever seen [at] a facility since [she] was promoted to the position as consultant pharmacist" and that she thought "the pharmacy permit could have been easily revoked on that day."

Centurion disagreed with Scott's comments and asked her to change them on the CQI form. Centurion told her that she did not need to log Epclusa because it was being monitored separately pursuant to a court order. And Centurion thought the "complete system breakdown" language was unfair, unprofessional, and not responsive to the information requested by the CQI form. Scott

complied and amended the CQI form even though she didn't want to. After changing the CQI form, Scott contacted the Department of Health to ask if her license would be jeopardized if "another accreditation agency inspected the facility" and disagreed with the amended findings.

Scott continued to raise concerns about Epclusa in subsequent prison visits. Centurion grew frustrated and asked APC if Scott could be replaced with another consultant pharmacist. APC counseled Scott about her performance, but Scott said that she felt she was being targeted and discriminated against. Scott was issued a final written warning by APC for work performance issues on August 29, 2018. According to APC, Scott then failed to appear at work as scheduled on two occasions. As a result of these and other "performance issues," Scott was fired a short time later.

Believing her termination to be a form of retaliation for speaking out, Scott initiated this action by filing a complaint in the Northern District of Florida on December 27, 2019. Her complaint alleged four counts: two whistleblower retaliation counts against both Defendants under the FPWA and FWA, and a retaliation count under the FCA and a common law tortious interference count against only Centurion. The complaint contained a single "prayer of relief" requesting compensatory damages, injunctive relief, prejudgment interest, attorney's fees and costs, and punitive damages "on all claims on which such damages may be presently asserted." The complaint did not indicate whether each form of

relief is specific to a particular count, other than asserting that compensatory damages are sought "on all Counts."

Defendants moved for summary judgment across the board. The district court granted summary judgment on three of the four counts but left the tortious interference count open and outstanding. In an amended summary judgment order, the district court directed the clerk to enter a partial final judgment under Federal Rule of Civil Procedure 54(b) "on the claims resolved by th[e] order." The trial court also certified that the still-pending tortious interference count satisfied the requirements of 28 U.S.C. § 1292(b).

Scott timely appealed the district court's grant of summary judgment on the FPWA and FWA counts. Scott did not, however, appeal the entry of summary judgment in favor of Centurion on the FCA count. Centurion, in turn, cross appealed the district court's denial of summary judgment on the tortious interference count.

## II.

A certification under Rule 54(b) implicates the scope of our appellate jurisdiction, so we must consider that issue *sua sponte*. *Ebrahimi v. City of Huntsville Bd. of Educ.*, 114 F.3d 162, 165 (11th Cir. 1997) (per curiam). Rule 54(b) reads this way:

> When an action presents more than one claim for relief -- whether as a claim, counterclaim, crossclaim, or third-party claim -- or when multiple parties are involved, the court may direct entry of a final judgment

> as to one or more, but fewer than all, claims or parties only if the court expressly determines that there is no just reason for delay. Otherwise, any order or other decision, however designated, that adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties does not end the action as to any of the claims or parties and may be revised at any time before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities.

FED. R. CIV. P. 54(b).

The Rule requires two things: a final judgment, and a determination that there is "no just reason" to delay certifying the order as final and immediately appealable. *Id.* We review *de novo* a district court's determination of the first prong -- whether a partial adjudication amounts to a final judgment. *Lloyd Noland Found. v. Tenet Health Care Corp.*, 483 F.3d 773, 778 (11th Cir. 2007). We review for abuse of discretion the district court's determination of the second prong -- whether there is "just reason for delay," *id.* (quoting *Curtiss-Wright Corp. v. Gen. Elec. Co.*, 446 U.S. 1, 8 (1980) (internal quotation marks omitted)), but only if the district court "clearly and cogently articulat[es] its reasoning," *Ebrahimi*, 114 F.3d at 166. Without a clear and cogent statement of its reasons, "we cannot defer to the district court['s] determination and must assess whether any obvious reasons support entry of the Rule 54(b) certification." *Id.* at 167. "[C]ircumstances will be encountered only rarely" that support Rule 54(b) certification. *Id.* at 166.

## A.

We begin with Scott's direct appeal. Ordinarily we may only hear appeals of "final decisions of the district courts." 28 U.S.C. § 1291. A final decision "ends the litigation on the merits and leaves nothing for the court to do but execute the judgment." *Pitney Bowes, Inc. v. Mestre*, 701 F.2d 1365, 1368 (11th Cir. 1983) (quoting *Catlin v. United States*, 324 U.S. 229, 233 (1945)). The flipside of this is that typically we may not review an order of a district court "adjudicating fewer than all the claims in a suit, or adjudicating the rights and liabilities of fewer than all the parties" because such an order is not a "final judgment from which an appeal may be taken." *Lloyd Noland*, 483 F.3d at 777 (citing *Lex Tex Ltd. v. Unifi, Inc. (In re Yarn Processing Pat. Validity Litig.)*, 680 F.2d 1338, 1339 (11th Cir. 1982)). But there is a limited exception to the general rule: we may entertain an appeal of an order that does not dispose of all claims against all parties if the district court properly certifies such an order as "final" under Rule 54(b). As we explain below, we conclude that Scott's appeal against Centurion fails the first prong, and, because there is no final judgment against Centurion and it would be a waste of judicial resources to hear Scott's appeal against APC separately, her appeal against APC fails the second.

To determine if there is a final judgment for purposes of a Rule 54(b) certification, our task is to "scrutinize the district court's evaluation of the interrelationship of the claims, in order to decide whether the district court completely disposed of one or more claims." *Brandt v. Bassett (In re Se. Banking Corp.)*, 69 F.3d 1539, 1546 (11th Cir. 1995). "We have interpreted the first prong of Rule 54(b)

to require that a judgment 'disposes entirely of a separable claim or dismisses a party entirely' in order to be considered 'final.'" *Lloyd Noland*, 483 F.3d at 779 (quoting *In re Se. Banking Corp.*, 69 F.3d at 1547).

This analysis is easy with respect to APC. The district court's order disposed of all counts against APC and, in doing so, dismissed it entirely from the action. This plainly amounts to a final judgment under Rule 54(b). *See id.* Of course, that is not the end of the story for APC. We are still required to determine that there is "no just reason for delay" in certifying the district court's order as final and immediately appealable. And for the reasons we explain below, we find that there is a powerful reason for delay: so that an appeal of all Scott's whistleblower counts against both Defendants can be heard together.

The final judgment analysis concerning Centurion is trickier. The district court's order did not dispose of all of Scott's counts against Centurion; her count for tortious interference remains open. So we must decide whether that count is separable from the three dismissed ones.

"[T]he line between deciding one of several claims and deciding only part of a single claim is very obscure." *In re Se. Banking Corp.*, 69 F.3d at 1547 (citations omitted). Ultimately, the "touchstone for determining whether an entire 'claim' has been adjudicated for the purposes of Rule 54(b) is whether that claim is 'separately enforceable' without 'mutually exclu[ding]' or 'substantially overlap[ping]' with remedies being sought by the remaining claims

pending in the district court." *Lloyd Noland*, 483 F.3d at 780 (alterations in original) (quoting *In re Se. Banking Corp.*, 69 F.3d at 1547). "True multiplicity is not present where . . . the plaintiff merely presents alternative theories, drawn from the law of the same sovereign, by which the same set of facts might give rise to a single liability." *Schexnaydre v. Travelers Ins. Co.*, 527 F.2d 855, 856 (5th Cir. 1976) (per curiam) (citations omitted).[1] In contrast, "[c]laims are separable when there is more than one possible recovery, or if different sorts of relief are sought." *In re Se. Banking Corp.*, 69 F.3d at 1547 (quotation marks and citations omitted). The bottom line is that even if a district court adjudicates one count of a complaint, if another count seeks substantially similar relief, "the adjudication of the first count does not represent a 'final judgment' because both counts are functionally part of the same claim under Rule 54(b)." *Lloyd Noland*, 483 F.3d at 780.

By way of example, in *Lloyd Noland* we considered whether a contractual indemnification count was separable from a common-law indemnification count where both counts stemmed from the breach of a guaranty agreement concerning the sale of a hospital. *Id.* at 775, 778–79. The district court granted summary judgment on the contractual indemnification count but not on the common-law indemnification count. *Id.* at 781. We held that the two counts were not separable because the common-law count

---

[1] All Fifth Circuit decisions handed down before the close of business on September 30, 1981, are binding precedent in the Eleventh Circuit. *Bonner v. City of Prichard*, 661 F.2d 1206, 1207 (11th Cir. 1981) (en banc).

"represented merely an alternate legal theory for a recovery identical to that sought by Count One" and the plaintiff "would be entitled to recover its losses through indemnification only once, at most." *Id.* The key to our analysis was whether the relief sought substantially overlapped so that it could only be recovered once no matter the theory the plaintiff ultimately prevailed on. Because it did, the counts were not separable. *See also In re Se. Banking,* 69 F.3d at 1547 ("[I]f the possible recoveries under various portions of the complaint are mutually exclusive, or substantially overlap, then they are not separable claims.").

In this case, the district court's order contained no analysis of whether Scott's tortious interference count is separable from the other three counts against Centurion. It is not. Scott's intentional interference count seeks substantially the same, mutually exclusive relief as the relief sought in the other three dismissed counts: compensatory damages to recoup her losses from being illegally fired. Scott can only recover these compensatory damages once under any of the theories that she presents. This means that, for present purposes, the counts are not separable. *See id.* Indeed, her complaint included only a single "prayer of relief" that did not draw any distinction between the relief sought for the different counts alleged.

We acknowledge that Florida law permits punitive damages on the tortious interference count and those damages are not

available on the whistleblower counts.[2]  But this does not change the calculus.  Separability hinges on whether the relief sought "substantially overlap[s]," not on whether it is identical.  *See id.*  The bulk of the relief Scott seeks -- compensatory damages for being illegally fired -- substantially overlaps, and the complaint does not distinguish between the relief sought on each count.  Moreover, without ultimately deciding the question, we are exceedingly skeptical that an award of punitive damages would be appropriate here.  Such an award requires that "the tort [] be committed in an outrageous manner or with fraud, malice, wantonness or oppression." *Imperial Majesty Cruise Line, LLC v. Weitnauer Duty Free, Inc.*, 987 So. 2d 706, 708 (Fla. 4th DCA 2008) (citation and quotation marks omitted).  At least on the record developed thus far, there is nothing that supports such a finding here.

In addition to seeking substantially overlapping relief, all four counts also stem from the same core set of facts: according to Scott, she complained about dangerous problems she identified in Centurion's prisons related to hiring unlicensed personnel to perform tasks that could only be performed by licensed personnel and about improperly logging a medication used to treat hepatitis C. In response to her complaints, APC and Centurion wrongfully

---

[2] At oral argument, counsel for Scott suggested that the relief available under the whistleblower and tortious interference counts also differs in that injunctive relief is available on the former but not the latter.  As a matter of Florida law, counsel was mistaken.  *See Dade Enters. v. Wometco Theatres, Inc.*, 119 Fla. 70, 74 (1935) (explaining that injunctive relief may be available as a remedy for tortious interference).

harmed her by firing her or causing her to be fired.  Whether Centurion's complaints to APC are characterized as "tortious interference" or "retaliation" does not change the nature of Scott's claimed injury or the damages she seeks.  Because the tortious interference count is not separable from the dismissed counts, there is no final judgment for us to review with respect to Centurion and we do not have jurisdiction to hear Scott's appeal as to that defendant.

**B.**

On to the second Rule 54(b) requirement.  The second Rule 54(b) requirement bars a court from entertaining an interlocutory appeal unless "the court expressly determines that there is no just reason for delay" in certifying the district court's order as final and immediately appealable.  FED. R. CIV. P. 54(b).  Because there was no final judgment against Centurion and we do not have jurisdiction over Scott's appeal against that defendant, we only analyze this second requirement for APC.

In determining whether there is just reason to delay, "a district court must take into account judicial administrative interests as well as the equities involved.  Consideration of the former is necessary to assure that application of the Rule effectively preserves the historic federal policy against piecemeal appeals." *Curtiss-Wright*, 446 U.S. at 8 (citation and quotation marks omitted).  "The federal concept of sound judicial administration and efficiency will not normally be furthered by 'hav[ing] piecemeal appeals that require two (or more) three-judge panels to familiarize themselves with a given case, instead of having the trial judge, who sits alone

and is intimately familiar with the whole case, revisit a portion of the case if he or she has erred in part and that portion is overturned following the adjudication of the whole case.'" *Ebrahimi*, 114 F.3d at 167 (quoting *Harriscom Svenska AB v. Harris Corp.*, 947 F.2d 627, 631 (2d Cir. 1991)).

The district court did not "clearly and cogently articulat[e]," *id.* at 166, why it found no just reason for delay, so we cannot defer to its determination; rather, we are required to "assess whether any obvious reasons support entry of the Rule 54(b) certification," *id.* at 167. As we see it, no obvious reasons do. "[W]hen a sound basis for the certification is not obvious and the district court merely repeats the language of the Rule or frames its certification in conclusory terms, we have little choice but to dismiss the appeal for lack of a final judgment." *Id.* at 166–67. That is all we have in this case. The district court's analysis does no more than recite the legal standard and offer the conclusion that it has been met. The court's analysis reads this way in full:

> Federal Rule of Civil Procedure 54(b) provides that when, as here, an action presents more than one claim or involves multiple parties, the court may direct entry of judgment as to one or more, but fewer than all, claims or parties, but "only if the court expressly determines that there is no just reason for delay." I expressly determine that there is no just reason for delay and thus direct entry of judgment on the claims resolved by this order.

This alone offers sufficient reason to find the Rule 54(b) certification improper.

But there is more. We conclude that there are substantial reasons to delay resolving Scott's appeal of her whistleblower counts against APC. Scott's whistleblower counts against Centurion and APC are identical. It makes good sense that appeals of an order dismissing those counts should be heard together. But because there is no final judgment against Centurion, we lack the power to adjudicate those counts against Centurion at this time. If we were to adjudicate the same counts leveled against Centurion and APC separately, our efforts would be wholly duplicative and waste substantial judicial resources. Moreover, we run the risk of inconsistent rulings if the panel hearing the appeal of the whistleblower counts against APC were to reach a different result than the panel hearing the appeal of the same whistleblower counts against Centurion. Thus, we also lack jurisdiction over Scott's appeal of her whistleblower counts against APC.

## C.

Finally, we turn to Centurion's cross appeal of the district court's denial of summary judgment on Scott's tortious interference count. Because the district court's denial of summary judgment is not a final judgment, Centurion seeks our review under 28 U.S.C. § 1292(b), which is one of the statutory exceptions to the final judgment rule. Section 1292(b) reads this way:

> When a district judge, in making in a civil action an order not otherwise appealable under this section,

shall be of the opinion that such order involves a controlling question of law as to which there is substantial ground for difference of opinion and that an immediate appeal from the order may materially advance the ultimate termination of the litigation, he shall so state in writing in such order.  The Court of Appeals which would have jurisdiction of an appeal of such action may thereupon, in its discretion, permit an appeal to be taken from such order, *if application is made to it within ten days after the entry of the order*: Provided, however, That application for an appeal hereunder shall not stay proceedings in the district court unless the district judge or the Court of Appeals or a judge thereof shall so order.

28 U.S.C. § 1292(b) (emphasis added).  The statute plainly requires a party to apply to the court of appeals for permission to appeal within ten days of the district court's order.  *Id.*; *see also McFarlin v. Conseco Servs., LLC*, 381 F.3d 1251, 1253 (11th Cir. 2004).  But Centurion never made any such application to this Court.  The failure to file a timely application for review is a jurisdictional bar that precludes our review.  *Local No. 1279 v. Alabama*, 453 F.2d 922, 924–25 (5th Cir. 1972).  We therefore lack jurisdiction over Centurion's cross appeal too.

**DISMISSED.**