[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 16-17179
Non-Argument Calendar

_____

D.C. Docket No. 6:15-cv-00469-GKS-DCI

SEANA BARNETT,

Plaintiff - Appellee
Cross - Appellant,

versus

SARA MACARTHUR,
individually,

Defendant - Appellant
Cross – Appellee,

DONALD ESLINGER,
in his official capacity as Sheriff of
Seminole County, Florida,

Defendant.

_____

Appeals from the United States District Court
for the Middle District of Florida
_____

(October 30, 2017)

Before WILSON, JULIE CARNES, and JILL PRYOR, Circuit Judges.

PER CURIAM:

In this interlocutory appeal, Deputy Sara MacArthur seeks review of the district court's summary judgment order denying her qualified immunity from Ms. Seana Barnett's § 1983 false arrest and unlawful detention claims. Barnett also cross-appeals six counts of her amended complaint dismissed on summary judgment. Upon thorough review, we affirm the denial of qualified immunity and dismiss the cross-appeal for lack of jurisdiction.

**I.**

On March 15, 2014, Barnett went out for dinner in downtown Orlando with her friend, Alicia Norwood. At approximately 3:25 A.M. the following morning, MacArthur observed Barnett come to a complete stop at a green light before continuing through the intersection. MacArthur then followed Barnett for a few blocks in her patrol vehicle and initiated a traffic stop. Barnett admitted to drinking one glass of wine at dinner approximately nine hours earlier. When requested, neither Barnett nor Norwood, the owner of the vehicle who was

2

intoxicated in the passenger's seat, were able to open the locked glovebox to provide the registration and proof of insurance, but Barnett did provide a valid Florida driver's license.

MacArthur claims that Barnett's eyes appeared bloodshot and glassy, although she did not smell or observe any alcohol or drugs in the car. Barnett spoke lucidly and cooperated fully throughout the stop. MacArthur had Barnett perform a number of field sobriety tests, including the "Walk-and-Turn," the "One Leg Stand," and the Vertical Nystagmus Test, among others. When instructed to perform the "Walk-and-Turn," Barnett informed MacArthur that her performance may be affected by injuries sustained from an automobile accident, including muscle tears in her leg, which required weekly physical therapy.[1] MacArthur did not take Barnett's physical injuries into consideration or alter the field sobriety tests.

The parties dispute how well Barnett performed on the field sobriety tests, some of which occurred outside of the view of MacArthur's dashboard video camera, but MacArthur claims that she witnessed multiple indicators of impairment on the tests. This was MacArthur's first or second DUI arrest. The

---

[1] MacArthur had asked Barnett whether she had any medical conditions upon the initial stop, prior to requesting her to perform the field sobriety tests, and Barnett responded that she did not. Subsequent conversation between MacArthur and Barnett clearly indicates that Barnett interpreted the initial question to mean whether or not she had any medical conditions that prevented her from driving.

3

parties dispute whether MacArthur explained, administered, and interpreted the results of the field sobriety tests properly.

MacArthur arrested Barnett and took her to the police station, where a DUI technician administered two breathalyzer tests.  Both tests returned negative, registering a blood-alcohol level of 0.000.  Upon receipt of the test results, MacArthur instructed the technician to get a urine analysis to test for drugs and issued Barnett a traffic citation for driving under the influence.  MacArthur admitted that she had no evidence to suspect Barnett was under the influence of drugs at the time of the arrest.  After consenting to the urinalysis, Barnett was processed as an inmate, required to undress and shower, and placed in a jail cell until her release shortly after 1:00 P.M.

The results of Barnett's urine testing were produced on April 15, 2014 and confirmed that no drugs were present in Barnett's system at the time of arrest. Barnett was arraigned on April 16, 2014, and the state entered a nolle prosequi on May 2, 2014.

On October 16, 2015, Barnett filed an eight count amended complaint asserting both federal § 1983 and state law claims against MacArthur in her individual capacity and against Sheriff Eslinger, Sheriff of Seminole County, Florida, in his official capacity.  On November 16, 2016 the district court entered an order granting MacArthur and Eslinger summary judgment on six of the eight

counts, but denying MacArthur qualified immunity on Count I—Barnett's § 1983 false arrest and unlawful detention claims—and denying Eslinger summary judgment on Count III—Barnett's state law false imprisonment claim.

MacArthur appeals the district court's order denying her qualified immunity on Count I, and Barnett cross-appeals the grant of summary judgment on Counts II, IV, V, VI, VII, and VIII, and the denial of punitive damages.[2]

## II.

As a threshold matter, we must determine whether we have proper jurisdiction to review these interlocutory appeals.[3]  Our discussion of the jurisdictional issues proceeds in three steps.  First, we address whether we have jurisdiction over MacArthur's appeal of the order denying her qualified immunity on Count I.  Second, we consider whether the district court's Rule 54(b) certification of the order granting summary judgment on Counts II, IV, V, VI, and VII, and the order denying punitive damages was proper.  Third, we determine whether we have pendent appellate jurisdiction over Counts II, IV, V, VI, VII, and VIII, and the denial of punitive damages.

## A.

---

[2] It is important to clarify at the outset that Eslinger does not currently appeal the denial of summary judgment as to Count III and is not an appellant in this case.  Both MacArthur and Eslinger responded to this court's jurisdictional questions, however, because those questions were addressed to both parties.

[3] Concerned about the finality of the summary judgment order, this court directed the parties to brief the issue of our jurisdiction to hear Barnett's cross-appeals.

Ordinarily, this court has jurisdiction to review only "final decisions of the district courts." 28 U.S.C. § 1291. A final decision "ends the litigation on the merits and leaves nothing for the court to do but execute the judgment." *Pitney Bowes, Inc. v. Mestre*, 701 F.2d 1365, 1368 (11th Cir. 1983). Generally, then, appellate jurisdiction exists only when a district court order adjudicates all of the claims of all of the parties in a suit. *Lloyd Noland Found., Inc. v. Tenet Health Care Corp.*, 483 F.3d 773, 777 (11th Cir. 2007). There are, however, certain classes of orders made appealable by statutory or jurisprudential exception, even where a final order has not resolved all of the issues of all of the parties below. 28 U.S.C. § 1292; *CSX Transp., Inc. v. City of Garden City*, 235 F.3d 1325, 1327 (11th Cir. 2000).

While "the denial of a motion for summary judgment is not a final decision under 28 U.S.C. § 1291," *Pitney Bowes, Inc.*, 701 F.2d at 1368, this "general rule does not apply when the summary judgment motion is based on a claim of qualified immunity." *Plumhoff v. Rickard*, 573 U.S. __, 134 S. Ct. 2012, 2018–19 (2014). The collateral-order doctrine provides a narrow exception to the final-judgment rule where the order below (1) conclusively determines the disputed question, (2) resolves an important issue completely separate from the merits of the action, and (3) is effectively unreviewable on appeal from the final judgment. *Firestone Tire & Rubber Co. v. Risjord*, 449 U.S. 368, 375, 101 S. Ct. 669, 674

6

(1981). An appeal of the denial of qualified immunity warrants this exception because the issue is "both important and completely separate from the merits of the action, and . . . could not be effectively reviewed on appeal from a final judgment because by that time the immunity from standing trial will have been irretrievably lost." *Plumhoff*, 573 U.S. at __, 134 S. Ct. at 2019. Accordingly, we have jurisdiction to review MacArthur's appeal of the denial of qualified immunity under the collateral-order doctrine.

## B.

As for Barnett's cross-appeals, she proffers two bases for our immediate appellate jurisdiction: Rule 54(b) certification and pendent appellate jurisdiction. We begin with the claims certified by the district court for immediate review under Rule 54(b).

The district court granted Barnett's motion to certify its summary judgment order for immediate appeal under Rule 54(b) on Counts II, IV, V, VI, VII, and the denial of punitive damages.[4] When a district court properly certifies a judgment as "final" under Rule 54(b) of the Federal Rules of Civil Procedure, an appellate court can review that judgment even if it does not end the litigation on the merits for all parties. *Lloyd Noland*, 483 F.3d at 777. The purpose of the rule "is to codify the

---

[4] Notably, Barnett did not request Rule 54(b) certification of the order granting summary judgment with respect to Count VIII of her amended complaint, and certification of Count VIII was not granted by the district court. As a result, proper jurisdiction over Count VIII would require pendent appellate jurisdiction over that claim. *See* subsection II.C.3., *infra*.

7

historic practice of 'prohibit[ing] piecemeal disposition of litigation and permitting appeals only from final judgments,' except in the 'infrequent harsh case' in which the district court properly makes the determinations contemplated by the rule." *In re Se. Banking Corp.*, 69 F.3d 1539, 1547 (11th Cir. 1995) (alteration in original) (quoting Fed. R. Civ. P. 54(b) Advisory Committee's Note); *Vann v. Citicorp Sav. of Ill.,* 891 F.2d 1507, 1509–10 (11th Cir. 1990).

The district court's Rule 54(b) determinations are not conclusive on this court, however.  In order to confirm whether we have proper jurisdiction over a cross-appeal, we must determine whether the district court's certification order "fit[s] within the scope of the rule." *In re Se. Banking Corp.*, 69 F.3d at 1546.  If it does not, we must dismiss the cross-appeal or find another basis for our jurisdiction.  *Lloyd Noland*, 483 F.3d at 778 n.5.

Federal Rule of Civil Procedure 54(b) reads in pertinent part:

When an action presents more than one claim for relief—whether as a claim, counterclaim, crossclaim, or third-party claim—or when multiple parties are involved, the court may direct entry of a final judgment as to one or more, but fewer than all, claims or parties only if the court expressly determines that there is no just reason for delay.

Thus, the district court must reach two conclusions in order to certify its judgment for immediate appeal.  *Lloyd Noland*, 483 F.3d at 777.  First, the court must determine that its order "is, in fact, both 'final' and a 'judgment'" within the meaning of Rule 54(b).  *Id.*  A final judgment must either entirely dispose of a

8

separable claim or completely dismiss a party from the case. *Id.* at 779. We review de novo the district court's determination that its partial adjudication amounted to a final judgment. *Id.* at 778. Thus, our task is to "scrutinize the district court's evaluation of the interrelationship of the claims, in order to decide whether the district court completely disposed of one or more claims." *In re Se. Banking Corp.*, 69 F.3d at 1546.

We have observed on multiple occasions that "the line between deciding one of several claims and deciding only part of a single claim is very obscure." *See Lloyd Noland*, 483 F.3d at 780; *In re Se. Banking Corp.*, 69 F.3d at 1547. Nevertheless, we have developed guidelines, and "the touchstone for determining whether an entire 'claim' has been adjudicated for the purposes of Rule 54(b) is whether that claim is separately enforceable without mutually excluding or substantially overlapping with remedies being sought by the remaining claims pending in the district court." *Lloyd Noland*, 483 F.3d at 780 (internal quotation marks omitted and alteration adopted). Thus, "even if a district court has adjudicated one count of a complaint, but another count seeks substantially similar relief, the adjudication of the first count does not represent a 'final judgment' because both counts are functionally part of the same claim under Rule 54(b)." *Id.*

In the second step of the certification analysis, the district court must determine that there is no "just reason for delay." *Id.* at 777. When making this

9

determination, a district court should exercise its discretion in light of "judicial administrative interests," the "historic federal policy against piecemeal appeals," and "the equities involved." *Id.* (quoting *Curtiss-Wright Corp. v. Gen. Elec. Co.*, 446 U.S. 1, 7, 100 S. Ct. 1460, 1464 (1980)). We review a district court's conclusion that there is no just reason for delay for abuse of discretion, and we reach this inquiry only if we first determine that the order was a final judgment. *Id.* at 778. We now turn to each order certified by the district court.

*1. Count II: 42 U.S.C. § 1983 Claim against Eslinger*

In Count II Barnett alleges under 42 U.S.C. § 1983 that Eslinger's policies and customs as Sheriff of Seminole County caused MacArthur's arrest and detention in violation of the Fourth and Fourteenth Amendments.[5] MacArthur and Eslinger argue that Count II is not a final judgment because Count II and Count III—Barnett's common law false imprisonment claim against Eslinger—are not sufficiently separable claims but involve fundamentally the same legal question and seek substantially the same relief. Barnett, on the other hand, argues that Count II is separable from Count III because Count II requires a showing that Eslinger's official policy caused a constitutional violation, whereas Count III does not. Additionally, Barnett argues that the relief sought in the two claims differs

---

[5] The district court granted summary judgment on all of Barnett's § 1983 Fourteenth Amendment claims, because, as Barnett admitted, none of her claims implicate the Fourteenth Amendment.

10

significantly; damages are capped under state law but not under § 1983, which also allows for the awarding of attorney's fees.

We find that Counts II and III are not separately enforceable claims for the purposes of Rule 54(b) certification because they seek substantially the same, mutually exclusive remedy. Both claims are filed against Sheriff Eslinger in his official capacity and seek damages for the same alleged harm arising from the same set of facts: the arrest and detention of Ms. Barnett without probable cause. Therefore, Barnett, "if successful [on Count II], will foreclose at least some—if not all—of the relief sought [in Count III]." *In re Se. Banking Corp.*, 69 F.3d at 1549.

While Barnett's § 1983 claim and her state common law claim present distinctive legal *theories* rooted in different bodies of law, Counts II and III do not constitute two separately enforceable *claims* under Rule 54(b). *See Schexnaydre v. Travelers Ins. Co.*, 527 F.2d 855, 856 (5th Cir. 1976) ("True multiplicity is not present where . . . the plaintiff merely presents alternative theories . . . by which the same set of facts might give rise to a single liability.").[6] The fact that Barnett draws upon both federal and state law in seeking a common remedy to an identical harm does not in itself make her claims separable for Rule 54(b) purposes.

---

[6] *See Bonner v. City of Prichard*, 661 F.2d 1206, 1207 (11th Cir. 1981) (en banc) (holding that all decisions of the "old Fifth" Circuit handed down prior to the close of business on September 30, 1981, are binding precedent in the Eleventh Circuit).

Barnett's arguments about the possibility of larger damages awards under § 1983 also miss the point.  Separability does not hinge upon the availability of attorney's fees awards, but upon whether two counts seek "different sorts of relief." *In re Se. Banking Corp.*, 69 F.3d at 1547.  Because Barnett seeks substantially the same relief for the same harm arising from the same set of facts in Counts II and III, we find that resolution of Count II "d[oes] not constitute a 'final judgment' conferring appellate jurisdiction while the alternate theory for the same relief remain[s] outstanding." *Lloyd Noland*, 483 F.3d at 781; *Schexnaydre*, 527 F.2d at 856.  Accordingly, certification of Count II for immediate appeal was improper.

*2. Count IV: Common Law False Imprisonment Claim against MacArthur*

Count IV of Barnett's amended complaint alleges that MacArthur falsely imprisoned Barnett and "unlawfully detained and deprived [her] of her liberty" in violation of Florida law.  The district court granted summary judgment to MacArthur on state law immunity grounds, finding that "MacArthur's conduct related to Barnett's arrest and detention does not evidence bad faith, actual malice, or wanton and willful disregard of human rights, safety, or property."  MacArthur and Eslinger contest that Count IV is not separable from Count I—Barnett's § 1983 unlawful detention claim against MacArthur.  Both parties make familiar arguments.

We find that Counts IV and I are not separately enforceable under Rule 54(b), because they merely present alternative theories for achieving substantially the same relief to redress the same harm arising from the same set of facts. *See Schexnaydre*, 527 F.2d at 856; *Lloyd Noland*, 483 F.3d at 780. As discussed above, the fact that Count IV implicates Florida law while Count I implicates federal law does not overcome the reality that both counts seek the same remedy against MacArthur for her actions in arresting and detaining Barnett, and, therefore, that "both counts are functionally part of the same claim under Rule 54(b)." *Lloyd Noland*, 483 F.3d at 780. Because the district court's ruling on Count IV does not completely dispose of a separable claim, Rule 54(b) certification of Count IV was improper.

### 3. Counts V–VII: Malicious Prosecution Claims against MacArthur and Eslinger

Counts V and VI of Barnett's amended complaint allege that MacArthur and Eslinger caused the malicious prosecution of Barnett under Florida common law. Count VII alleges that MacArthur caused the malicious prosecution of Barnett in violation of the Fourth Amendment. The district court found that MacArthur was entitled to state immunity from Count V because there was no evidence that MacArthur acted with malice. The district court granted summary judgment to Eslinger on Count VI because it found no evidence of an official policy, practice, or procedure requiring DUI arrestees to be prosecuted regardless of the

13

circumstances. Lastly, the district court ruled in MacArthur's favor on Count VII because it found that Barnett was never seized in relation to the prosecution.

While neither party contests Rule 54(b) certification of these issues, this court must review sua sponte the propriety of certification because it implicates our appellate jurisdiction. *Ebrahimi v. City of Huntsville Bd. of Educ.*, 114 F.3d 162, 165 (11th Cir. 1997). It is our duty, then, to "scrutinize" these claims as well. *In re Se. Banking Corp.*, 69 F.3d at 1546.

We find that the remedies sought for the malicious prosecution claims substantially overlap with the remedies sought for the pending unlawful arrest and conviction claims. Therefore, these claims are not separately enforceable for purposes of Rule 54(b). Notably, we find no evidence in the record or the certification ruling that "different sorts of relief" were sought or different sorts of harms resulted from the malicious prosecution claims. In Barnett's amended complaint, she alleges the exact same harms[7] and seeks substantially the same relief for the remaining unlawful arrest and detention claims as she does for the malicious prosecution claims. While it is possible that specific and distinct harms may flow from Barnett's prosecution, neither Barnett nor the record convinces us that this is the case.

---

[7] "As a direct and proximate result of the acts described above, Plaintiff suffered the loss of her liberty and freedom, mental anguish, humiliation, damage to her reputation and career, and has lost employment opportunities. Plaintiff's losses are either permanent or continuing and Plaintiff will suffer the losses in the future."

14

Indeed, in her complaint, Barnett alleged that an employer refused to hire her based on a criminal history background record "pertaining to [her] *arrest*." (emphasis added). Barnett goes on to allege that "[s]ince her *arrest* on March 16, 2014, [she] has been rejected from employment by several other employers that have conducted criminal background checks," and she offers her publically available "mugshot"—the product of her *arrest*—in support of these propositions. (emphasis added). Nothing else in Barnett's complaint or the record demonstrates that the relief she seeks in Counts V–VII for her prosecution differs from the relief she seeks in Counts I and III for her arrest and detention. *Id.* at 780.

The district court's certification order also provides us with little support for the ruling. It merely concludes that Counts V–VII meet the standards for Rule 54(b) certification, but does not "delve deeper before deciding that this is a case of genuinely separate claims." *In re Se. Banking Corp.*, 69 F.3d at 1548. We find no adequate justification that the order granting summary judgment on Counts V–VII is a final judgment under Rule 54(b). We therefore lack jurisdiction to review the merits of the order under Rule 54(b) at this time.

### *4. Denial of Punitive Damages against MacArthur*

Finally, we address whether certification of the denial of punitive damages for claims against MacArthur in Counts I, IV, V, and VII was proper under Rule 54(b). An order disposing of a request for punitive damages without disposing of

the underlying substantive claim is not amenable to Rule 54(b) certification. *Edwards v. Prime, Inc.*, 602 F.3d 1276, 1289 & n.11 (noting that "*partial dismissals*" foreclosing certain types of damages are not "final judgment[s] disposing of an entire claim" and therefore "not the stuff of Rule 54(b) certification")  Therefore, certification of the denial of punitive damages as to Count I was improper.

Likewise, the denial of punitive damages for Counts IV, V, and VII is not an enforceable decision, because remedies are not separately enforceable from their underlying claims.  *See Liberty Mut. Ins. Co. v. Wetzel*, 424 U.S. 737, 743 n.4, 96 S. Ct. 1202, 1206 n.4 (1976) ("[A] complaint asserting only one legal right, even if seeking multiple remedies for the alleged violation of that right, states a single claim for relief.").  Accordingly, certification of the denial of punitive damages for Counts I, IV, V, and VII was improper, and we lack jurisdiction to review the denial of punitive damages under Rule 54(b).

Before concluding our Rule 54(b) discussion, it is worth reiterating our circuit's "conservative" posture towards Rule 54(b) certification.  *In re Se. Banking Corp.*, 69 F.3d at 1550.  We have strongly cautioned against a broad reading of Rule 54(b),[8] particularly where, as is the case here, "if we were to decide each of the issues raised in the present appeals, we are quite likely to have to decide one or

---

[8] "There are grave practical objections to reading the rule broadly." *In re Se. Banking Corp.*, 69 F.3d at 1547.

more additional appeals in these cases in the future." *Id.* at 1548. The purposes of Rule 54(b) would be especially frustrated in the present appeal, where Barnett neglected to request—and the district court did not grant—certification regarding Count VIII of her amended complaint, yet she now includes Count VIII in her cross-appeal. As a result, even if it were appropriate for us to review the other three malicious prosecution claims on the merits at this time, it is extremely likely that we would have to review the fourth malicious prosecution claim—involving the same facts and the same law as Count VII—on a subsequent appeal. Thus, the "strong policy against piecemeal litigation, which informs the determination of separability and 'requisite finality' for Rule 54(b) purposes, supports our result." *In re Se. Banking Corp.*, 69 F.3d at 1550; *see Curtiss-Wright Corp*, 446 U.S. at 8–10,  100 S. Ct. at 1465–66.

## C.

Having determined that we lack jurisdiction to review Barnett's cross-appeals of Counts II, IV, V, VI, VII (and VIII), and the denial of punitive damages on Rule 54(b) certification grounds, we now turn to Barnett's second basis for appellate jurisdiction: pendent appellate jurisdiction. We have pendent appellate jurisdiction to review otherwise nonappealable orders if they are "inextricably intertwined with an appealable decision" or where review of the pendent issue is necessary to ensure meaningful review of the appealable issues. *Hudson v. Hall*,

17

231 F.3d 1289, 1294 (11th Cir. 2000) (internal quotation marks omitted).  We are wary of attempts to "piggy-back" cross-appeals on an appeal of the denial of qualified immunity.  *Leslie v. Hancock Cty. Bd. of Educ.*, 720 F.3d 1338, 1344–45 (11th Cir. 2013).  Therefore, we must examine each claim in Barnett's cross-appeal to determine whether it is "sufficiently interwoven with qualified immunity to fall within the court's pendent appellate jurisdiction."  *Harris v. Bd. of Educ.*, 105 F.3d 591, 595 (11th Cir. 1997).  We do so conscious "that a rule loosely allowing pendent appellate jurisdiction would encourage parties to parlay . . .  collateral orders into multi-issue interlocutory appeal tickets."  *Swint v. Chambers Cty. Comm'n*, 514 U.S. 35, 49–50, 115 S. Ct. 1203, 1211 (1995).

### *1. Count II: 42 U.S.C. § 1983 Claim against Eslinger*

Because Eslinger is not an appellant in this case, in order to have jurisdiction over Barnett's cross-appeal of Count II, this Court must exercise "pendent party jurisdiction—i.e., pendent jurisdiction over a party not involved in the main appeal."  *King v. Cessna Aircraft Co.*, 562 F.3d 1374, 1379 n.1 (11th Cir. 2009).  Such jurisdiction, however, should only be exercised in rare circumstances.  *Id.*

This is not one of those circumstances.  Barnett's § 1983 claim against Eslinger is not inextricably intertwined with the qualified immunity issues presented in her § 1983 claim against MacArthur.  Count II failed on the merits in several respects legally independent from MacArthur's claim for qualified

18

immunity.  Barnett's § 1983 claim against Eslinger failed to provide sufficient evidence that Eslinger's policies were facially unconstitutional or that they caused any allegedly unconstitutional conduct that may have occurred.  These findings were made irrespective to whether or not MacArthur had arguable probable cause for her actions.  Indeed, the court found that Eslinger's policies explicitly *required* probable cause for an arrest and detention, and, therefore, that Eslinger's policies could not have been the cause of MacArthur's allegedly unconstitutional actions.  Review of Count II is not necessary to ensure meaningful review of the qualified immunity issue.  *See Hudson*, 231 F.3d at 1294.  Therefore, we lack pendent appellate jurisdiction to review Count II and must dismiss it at this time.

*2. Count IV: Common Law False Imprisonment Claim against MacArthur*

Next, we consider whether Barnett's common law false imprisonment claim is "sufficiently interwoven" with the qualified immunity issue in MacArthur's appeal to necessitate immediate review.  *Hudson*, 231 F.3d at 1294.  The district court granted summary judgment on Count IV based on MacArthur's state law immunity.  Although Count IV and Count I both involve officer immunity issues, the legal standards for qualified immunity and the state immunity provided by

Florida statute differ significantly, and it is not necessary that we review the latter in order to afford meaningful review of the former.[9]

Importantly, the factual and legal bases for a state immunity determination do not bear on the federal qualified immunity question before us in MacArthur's appeal.[10]  Because the state law immunity issue in Count IV is not inextricably intertwined with the qualified immunity issue before us in Count I, we lack pendent appellate jurisdiction to review Count IV at this time.  Therefore, the cross-appeal of Count IV is dismissed.

### 3. Counts V–VIII: Malicious Prosecution Claims against MacArthur and Eslinger

Our consideration of Counts V–VIII leads us to the same conclusion as above: we can provide full and meaningful review of the qualified immunity claim without considering whether Barnett's subsequent prosecution may have violated her rights.  The factual and legal questions bearing upon the validity of the malicious prosecution claims in Counts V–VIII are not sufficiently intertwined with the qualified immunity analysis before us in MacArthur's appeal of Count I.

---

[9] Section 768.28, Florida Statutes, provides Florida's law enforcement officers with immunity for acts performed within the scope of employment so long as they have not "acted in bad faith or with malicious purpose or in a manner exhibiting wanton and willful disregard of human rights, safety, or property." Fla. Stat. § 768.28(9)(a).  Florida courts have interpreted this statute to require a showing of actual malice, where the conduct is "worse than 'gross negligence,'" *Sierra v. Associated Marine Insts., Inc.*, 850 So.2d 582, 593 (Fla. 5th Dist. Ct. App. 2003), and "more reprehensible and unacceptable than mere intentional conduct." *Richardson v. City of Pompano Beach*, 511 So.2d 1121, 1123 (Fla. 4th Dist. Ct. App. 1987).

[10] The district court based its state law immunity determination upon a finding that "the video and audio evidence show MacArthur treating Barnett in a respectful and professional manner before, during, and after Barnett's arrest."

We therefore lack pendent appellate jurisdiction over Barnett's cross-appeal of Counts V–VIII and, accordingly, dismiss them at this time.

### 4. Denial of Punitive Damages against MacArthur

Finally, we consider whether we have pendent appellate jurisdiction to review the district court's determination that Barnett cannot recover punitive damages on any of her claims against MacArthur. Florida law makes punitive damages awards available when the trier of fact finds, by clear and convincing evidence, "that the defendant was personally guilty of intentional misconduct or gross negligence." Fla. Stat. § 768.72(2). Punitive damages are appropriate in § 1983 cases "where a defendant's conduct is motivated by evil intent or involves callous or reckless indifference to federally protected rights." *H.C. by Hewett v. Jarrard*, 786 F.2d 1080, 1089 (11th Cir. 1986). The district court found that MacArthur's conduct fell (well) short of both standards.

Here, as above, we need not review whether MacArthur's conduct was grossly negligent or motivated by evil intent in order to determine whether there was arguable probable cause to arrest and detain Barnett. The punitive damages claims are not sufficiently interwoven with qualified immunity so as to warrant pendent appellate jurisdiction. *Hudson*, 231 F.3d at 1294. Accordingly, we dismiss the cross-appeal of the denial of punitive damages.

**III.**

21

Having dismissed all other claims for lack of jurisdiction, we now turn to the only appeal over which we have proper jurisdiction: the denial of qualified immunity in Count I.

## A.

We review a summary judgment order denying qualified immunity de novo, and apply the same legal standards as the district court. *Durruthy v. Pastor*, 351 F.3d 1080, 1084 (11th Cir. 2003). Summary judgment is appropriate where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). We resolve all issues of material fact in favor of the plaintiff, and determine whether the defendant is entitled to qualified immunity under that version of the facts. *Durruthy*, 351 F.3d at 1084.

## B.

Qualified immunity offers complete protection for government officials sued in their individual capacities "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S. Ct. 2727, 2738 (1982). Thus, "[q]ualified immunity balances two important interests—the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." *Pearson v. Callahan*, 555 U.S. 223, 231, 129 S.

22

Ct. 808, 815 (2009).  Therefore, "qualified immunity is a privilege that provides 'an *immunity from suit* rather than a mere defense to liability.'"  *Bates v. Harvey*, 518 F.3d 1233, 1242 (11th Cir. 2008) (quoting *Saucier v. Katz*, 533 U.S. 194, 200–01, 121 S. Ct. 2151, 2156 (2001)).

To receive qualified immunity, a public official "must first prove that he was acting within the scope of his discretionary authority when the allegedly wrongful acts occurred."  *Lee v. Ferraro*, 284 F.3d 1188, 1194 (11th Cir. 2002) (internal quotation marks omitted).  Once this is accomplished, the burden shifts to the plaintiff to overcome the defense of qualified immunity.  *Id.*  Here, there is no dispute over whether MacArthur was acting within the scope of her discretionary authority as a Deputy Sheriff of Seminole County when she arrested and detained Barnett on March 16, 2014.

Traditional qualified immunity analysis then proceeds in two steps, although we retain flexibility in the order in which we approach the inquiries.  *See Pearson*, 555 U.S. at 242, 129 S. Ct. at 821.  Our initial task is to determine whether the officer's conduct violated a constitutional right, viewing the facts in the light most favorable to the plaintiff.  *Saucier*, 533 U.S. at 201, 121 S. Ct. at 2156; *Case v. Eslinger*, 555 F.3d 1317, 1326 (11th Cir. 2009).  If we answer that question in the affirmative, we next consider whether the right violated was clearly established "in light of the specific context of the case."  *Saucier*, 533 U.S. at 201, 121 S. Ct. at

23

2156.  In the Fourth Amendment context, an officer is entitled to qualified immunity in making an arrest so long as there was *arguable* probable cause for the arrest.  *Kingsland v. City of Miami*, 382 F.3d 1220, 1232 (11th Cir. 2004).  "Arguable probable cause exists where reasonable officers in the same circumstances and possessing the same knowledge as the Defendant could have believed that probable cause existed to arrest."  *Case*, 555 F.3d at 1327 (internal quotation marks omitted).  This is an objective standard, which asks "whether the officer's actions are objectively reasonable regardless of the officer's underlying intent or motivation."  *Ferraro*, 284 F.3d at 1195 (internal quotation marks omitted and alteration adopted).

### 1. Barnett's § 1983 Unlawful Arrest Claim

In Count I of her amended complaint, Barnett alleges that "there was no probable cause to arrest Barnett for DUI" and that "MacArthur's conduct violated [Barnett's] clearly established rights under the Fourth Amendment to the United States Constitution to be free from involuntary detention in the absence of probable cause."  MacArthur, on the other hand, argues that she had actual probable cause to arrest and detain Barnett, and that a reasonable officer could have believed that probable cause was present.

After careful review of the evidence, resolving all genuine disputes of material fact in Barnett's favor, we cannot conclude as a matter of law that

24

probable cause existed for her arrest, as required by the Fourth Amendment. Furthermore, under these facts and circumstances, we find that a reasonable officer could not have believed that probable cause existed to arrest Barnett. *Case*, 555 F.3d at 1327. Accordingly, MacArthur is not entitled to qualified immunity against the § 1983 unlawful arrest claim.

The undisputed facts provide little to no objective evidence that MacArthur was driving impaired, and significant facts remain in genuine dispute, such as: whether Barnett's eyes appeared glassy or bloodshot; whether or not she "maintained her lane" or pulled over the car in an erratic manner; whether MacArthur properly administered the field sobriety tests; how many indicators Barnett's performance on the field tests triggered; and whether MacArthur should have disregarded Barnett's medical conditions when administering the field sobriety tests.[11]

When we couple these important disputed facts, which we must view in the light most favorable to Barnett, with the undisputed evidence—that MacArthur did not smell or observe any alcohol during the encounter; perceived no indication that Barnett was under the influence of drugs; and admitted that Barnett communicated lucidly and cooperated fully—we do not believe a reasonable officer could have

---

[11] "[I]f the evidence at the summary judgment stage, viewed in the light most favorable to the plaintiff, shows there are facts that are inconsistent with qualified immunity being granted, the case and the qualified immunity issue along with it will proceed to trial." *Johnson v. Breeden*, 280 F.3d 1308, 1317 (11th Cir. 2002).

25

found probable cause to arrest Barnett.  *See Kingsland*, 382 F.3d at 1232.

Accordingly, we affirm the denial of MacArthur's qualified immunity defense

against the § 1983 unlawful arrest claim.

### 2. Barnett's § 1983 Unlawful Detention Claim

We now turn to MacArthur's assertion of qualified immunity from the

§ 1983 unlawful detention claim.  Taking into account the totality of the

circumstances outlined above, and "in light of the specific context" of MacArthur's

actions at the station, *Saucier*, 533 U.S. at 201, 121 S. Ct. at 2156, we find that

MacArthur violated Barnett's Fourth Amendment right in furthering her detention

without probable cause, and we find that no reasonable officer could have believed

there was probable cause to do so.  *Case*, 555 F.3d at 1327.  Accordingly,

MacArthur is not entitled to qualified immunity from the § 1983 unlawful

detention claim.

Upon arrival at the station, the DUI technician administered two

breathalyzer tests to determine Barnett's blood-alcohol content; both produced

results of 0.000.  MacArthur was notified of the results, and, *thereafter*, ordered a

urine analysis to test for drugs and advanced the DUI citation.  But MacArthur

admitted that she had no evidence at the time of arrest that Barnett was impaired by

drugs.  This included her assessment of Barnett's performance on the Vertical

Nystagmus Test, the only field sobriety test used to detect drug use.  MacArthur

did not observe any evidence of drugs in Barnett's vehicle, nor did she find any drugs in Barnett's purse when she searched it to retrieve her phone. It is only after the breathalyzer results came back negative, at 0.000, that MacArthur said she determined that "there was something . . . whether it was drugs or—obviously not alcohol . . . [b]ut I don't know what drugs that could have been."

Putting aside MacArthur's personal admission, the objective facts of Barnett's detention upon receipt of the breathalyzer results are these: (1) Barnett was not under the influence of alcohol; (2) there was no evidence to detain her for driving under the influence of any other controlled substance. Under these circumstances, no reasonable officer could have found that there was probable cause to continue to detain Barnett under Section 316.193 of the Florida Statutes. *See Case*, 555 F.3d at 1327. An arrest without probable cause clearly violates the Fourth Amendment to the Constitution. *Durruthy*, 351 F.3d at 1088.

MacArthur argues that it is not clearly established that failure to release an arrestee who registers a blood alcohol level under 0.05 is unconstitutional, pointing to the Florida DUI statute as a shield. In determining whether the law is clearly established, "[t]he salient question is whether the state of the law at the time of an incident provided fair warning to the defendant[] that [her] conduct was unconstitutional." *Tolan v. Cotton*, 572 U.S. ___, ___, 134 S. Ct. 1861, 1866 (2014) (internal quotations marks omitted and alteration adopted). When a

27

"preexisting general constitutional rule applies 'with obvious clarity to the specific conduct in question,'" a reasonable official would have had fair warning that her actions were unconstitutional, regardless of whether there is a fact-specific holding to that effect. *Vineyard v. Wilson*, 311 F.3d 1340, 1352 (11th Cir. 2002) (quoting *Hope v. Pelzer*, 536 U.S. 730, 741, 122 S. Ct. 2508, 2516 (2002)).  Any reasonable officer would have known that the "contours of the right" guaranteed by the Fourth Amendment to be free from arrest without probable cause clearly and obviously extend to the conduct in question here: advancing the detention of an arrestee without *any* cause. *See Anderson v. Creighton*, 483 U.S. 635, 640, 107 S. Ct. 3034, 3039 (1987).  Accordingly, a reasonable officer in MacArthur's circumstance would have had "fair warning" that her actions violated the Constitution. *Tolan*, 572 U.S. at ___, 134 S. Ct. at 1866.

MacArthur's argument regarding Florida's DUI statute misses the point. Section 316.193 simply requires one of three conditions to be met to ensure sobriety prior to releasing a DUI arrestee, one of which is an eight hour lapse from the time of arrest and one of which is a blood-alcohol level below 0.05.  Fla. Stat. § 316.193(9)(b)–(c).  Florida law grants officers discretion in making a DUI arrest *and* in releasing a DUI arrestee.  When an officer exercises this discretion under Florida law, the *Constitution* requires her to exercise her discretion in a way that does not violate a person's Fourth Amendment rights.  When an officer exercises

her discretion to refrain from releasing a DUI arrestee where there is no longer a basis for the arrest or detention, on the unsupported ex post justification that "there was something," she exercises her discretion in clear violation of the Fourth Amendment.

## IV.

For the foregoing reasons, we affirm the denial of qualified immunity for Barnett's § 1983 claims against MacArthur and dismiss Barnett's cross-appeal for lack of jurisdiction.

**AFFIRMED in part and DISMISSED in part for lack of jurisdiction.**