FILED
AUGUST 13, 2019
In the Office of the Clerk of Court
WA State Court of Appeals, Division III

IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| AARON L. LOWE, Trustee and | ) | No. 35569-1-III |
| Beneficiary of the Donald E. Lowe Trust, | ) | (consolidated with |
| Personal Representative, | ) | No. 35844-5-III) |
| | ) | |
| Appellant, | ) | |
| | ) | |
| v. | ) | UNPUBLISHED OPINION |
| | ) | |
| LONNIE D. LOWE, individually and as | ) | |
| Personal Representative of the Estate of | ) | |
| Betty L. Lowe, deceased, | ) | |
| | ) | |
| Respondent. | ) | |

SIDDOWAY, J. — Betty Lowe's will, together with written instructions that her will recognized as enforceable, favored her son Lonnie, by authorizing him either to share valuable silver coins and bars that were part of her estate, or to retain them for himself. He retained them for himself. Lonnie's brother Aaron challenged Lonnie's retention of the silver coins and bars. The action below was the third such challenge.

In separate but now hereby consolidated appeals, (1) Aaron challenges the trial court's dismissal of his third challenge, and (2) Aaron and his trial lawyer, Robert

Kovacevich, challenge the trial court's imposition of attorney fees as a sanction. For a third time, we affirm the trial court's rejection of Aaron's challenge to Lonnie's right to retain the silver. We reverse the trial court's award of all of Lonnie's attorney fees as sanctions but remand for consideration of more limited sanctions.

FACTS AND PROCEDURAL BACKGROUND

Betty Lowe died on October 1, 2011, survived by her sons Larry, Aaron and Lonnie, and by a number of grandchildren. *In re Estate of Lowe*, 191 Wn. App. 216, 222, 361 P.3d 789 (2015) (*Lowe* I). Her will named her son Lonnie as personal representative. *Id.* It directed that 80 percent of her estate be distributed equally among her sons and that the remaining 20 percent be distributed equally among her grandchildren. The will also provided, however, that Betty might execute separate written instructions for distributing tangible personal property, and as to any such property, those instructions would be honored. *Id.* Approximately four years before she died, Betty signed written instructions, prepared by her lawyer, directing that silver coins and bars accumulated years earlier by her late husband, Donald Lowe, be Lonnie's, "to distribute as he shall determine or retain for himself." *Id.* at 223.

Lonnie filed a petition in October 2011 for an order admitting Betty's will to probate and appointing him personal representative. *Id.* He elected to retain his mother's silver coins and bars for himself. *Id.* Within four months, Lonnie's brother Aaron brought suit against Lonnie individually and as the personal representative of Betty's

estate. *Id.* Having learned that Lonnie had also received some of the silver from Betty

during her lifetime, Aaron advanced a number of legal theories, seeking to require Lonnie

to return all of the silver to Betty's estate, for division among her sons and grandchildren.

Aaron also sought an accounting and an order removing Lonnie as personal

representative. *Id.*

In a deposition taking place on August 5, 2013, Aaron and his lawyer obtained a

handwritten note signed by Donald sometime before his death in 2003 and questioned the

lawyer who had handled the probate of Donald's estate about it. The note stated:

> Dear Boys,
>       Larry, Aaron & Lon
>
> I just wanted to write down some of my thoughts about after I'm gone.
>
>       I have asked Aaron to take responsibility in looking after your mother. It may be necessary to sell what ever [sic] he can to care for her. After she is gone, I want everything else divided between you boys or sold and the money divided between you.
>
> I told Mike that he can live in the 737 Napa house as long as he takes care of Kelsey.
>
>       My life was awfully short & I didn't do much.
>
>       You are three of the finest boys anyone could have, & I'm so proud of you. I hope you can get along with each other.
>
> Love, Dad
>       Don Lowe

Clerk's Papers (CP) at 13. The handwritten letter was allegedly discovered by Betty,

who provided to it Lonnie, who then faxed it to the lawyer handling Donald Lowe's

probate 10 years earlier, in August 2003.

In a proposed second amended and supplemental petition filed a month before the

trial date, Aaron relied on the note to assert that it had been a mistake to distribute

Donald's estate to Betty. It asked that Donald's estate be traced and distributed in

accordance with the note's instructions. The trial court denied Aaron's motion for leave

to file the second amended and supplemental petition.

At the conclusion of trial, the court denied all of the relief sought by Aaron.

Aaron appealed the trial court's decision, which this court affirmed. A petition for

review by the Supreme Court was denied. *Lowe v. Lowe*, 185 Wn.2d 1019 (2016).

Two months after this court's mandate in *Lowe* I, Lonnie filed a final report and

petition for decree of distribution and obtained a hearing date. *In re Estate of Lowe*, No.

34751-6-III, slip op. at 5 (Wash. Ct. App. Jan. 23, 2018) (unpublished) (*Lowe* II),

https://www.courts.wa.gov/opinions/pdf/321924.pub.pdf. Aaron filed a motion to

continue the hearing and a motion to stay. *Id.* He argued that Betty's estate could not be

closed until the claims he had proposed to add by his second amended and supplemental

petition were tried and resolved. *Id.* The trial court rejected Aaron's contention, ordered

the estate closed, and discharged Lonnie as personal representative. *Id*.

Aaron again appealed. This court rejected his argument that because the trial court

denied his 11th hour motion to amend in *Lowe* I, res judicata did not bar his late-asserted

claims. The opinion explained:

> There was no agreed or court-ordered reservation of claims here. Aaron simply moved to amend and supplement too late. "It is immaterial that the plaintiff in the first action sought to prove the acts relied on in the second action and was not permitted to do so because they were not alleged in the complaint and an application to amend the complaint came too late." RESTATEMENT [(SECOND) OF JUDGMENTS] § 25, cmt. b. As elaborated further in Section 26, comment b. of the *Restatement*,
>
>> It is emphasized that the mere refusal of the court in the first action to allow an amendment of the complaint to permit the plaintiff to introduce additional material with respect to a claim, even where the refusal of the amendment was urged by the defendant, is not a reservation by the court within the meaning of Clause (b). The plaintiff's ordinary recourse against an incorrect refusal of an amendment is direct attack by means of appeal from an adverse judgment.

*Lowe* II, slip op. at 10. Aaron again petitioned for review by the Supreme Court. His

petition was again denied. *In re Estate of Lowe*, 190 Wn.2d 1024, 418 P.3d 791 (2018).

In July 2016, Aaron, characterizing himself as "Trustee and Beneficiary of the

Donald E. Lowe Trust," filed the complaint that is the subject of this appeal. He asserted

that his father's handwritten note constituted a holographic living trust.[1]  He asked the

court to certify the "Donald E. Lowe Trust" as valid, appoint Aaron trustee, and order

Lonnie to deliver to Aaron either the silver bars and coins or an amount equal to their

value.

Lonnie moved to dismiss the action as barred by res judicata and collateral

estoppel; alternatively, he argued that the action was barred by RCW 11.68.110(2) and

the declaration of completion that Betty Lowe filed in the probate of Donald's estate in

2004.  He also sought sanctions against Aaron and his lawyer, Mr. Kovacevich, relying

on CR 11 and RCW 4.84.185.

The parties filed extensive evidence of the history of the prior lawsuits and

appeals, and the trial court treated the motion as one for summary judgment.  It granted

the motion and dismissed Aaron's complaint.  It later awarded Lonnie attorney fees

against Aaron and Mr. Kovacevich, jointly and severally.  Aaron timely appealed the

order dismissing his action.  He and Mr. Kovacevich later timely appealed the award of

sanctions.  We consolidated the appeals.

---

[1] By its terms, the note arguably contemplates the creation of a trust only upon death ("when I'm gone"), not earlier.  Neither the parties nor the court reached the issue of whether the language of the note created a living trust, as Aaron necessarily contends, and thereby a nonprobate asset.

ANALYSIS

I.     LONNIE WAS ENTITLED TO SUMMARY JUDGMENT

Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." CR 56(c). A material fact determines the outcome of the litigation in whole or in part. *RockRock Grp., LLC v. Value Logic, LLC*, 194 Wn. App. 904, 913, 380 P.3d 545 (2016). All reasonable inferences and facts are viewed in the light most favorable to the nonmoving party. *Id.* "'On appeal of summary judgment, the standard of review is de novo, and the appellate court performs the same inquiry as the trial court.'" *Martin v. Gonzaga Univ.*, 191 Wn.2d 712, 722, 425 P.3d 837 (2018) (quoting *Lybbert v. Grant County*, 141 Wn.2d 29, 34, 1 P.3d 1124 (2000)).

Turning first to collateral estoppel, modernly referred to as issue preclusion, the *Restatement (Second) of Judgments* section 27 states the "general rule": "When an issue of fact . . . is actually litigated and determined by a valid and final judgment, and the determination is essential to the judgment, the determination is conclusive in a subsequent action between the parties, whether on the same or a different claim." *Nielson v. Spanaway Gen. Med. Clinic, Inc.*, 135 Wn.2d 255, 262, 956 P.2d 312 (1998) (internal quotation marks omitted). The purpose of issue preclusion is to promote judicial economy by avoiding relitigation of the same issue, to afford the parties the assurance of

7

finality of judicial determinations, and to prevent harassment of and inconvenience to litigants. *Hanson v. City of Snohomish*, 121 Wn.2d 552, 561, 852 P.2d 295 (1993). The party asserting issue preclusion must demonstrate that (1) the issue in the prior adjudication was identical to the issue currently presented for review, (2) the prior adjudication was a final judgment on the merits, (3) the party against whom the doctrine is asserted must have been a party to or in privity with a party to the prior adjudication, and (4) barring relitigation of the issue will not work an injustice on the party against whom the doctrine is applied. *State v. Harrison*, 148 Wn.2d 550, 561, 61 P.3d 1104 (2003). Aaron does not dispute that *Lowe* I and *Lowe* II were resolved by final judgments on the merits.

As for identity of issues, in *Lowe* I, it was necessary to determine whether the silver belonged to Betty and was therefore subject to the terms of her will and written instructions. If the silver, or some of it, was an asset of what Aaron now characterizes as the Donald E. Lowe Trust,[2] it would never have belonged to Betty. The identical issue necessarily decided in *Lowe* I and that would have to be redecided in the action below was "who owned the silver following Donald's death?"

---

[2] Aaron has conceded that the silver coins and bars were community property. Donald could only have contributed his share of the couple's community property to any trust he created.

8

The trial court found that "Betty L. Lowe . . . was entitled to inherit all of Donald E. Lowe's property," that "[a]ny and all gifts made by Betty L. Lowe to Lonnie Lowe before her death . . . were her right to make," and "[t]he Written Instruction of Tangible Personal Property dated September 11, 2007 . . . is valid." CP at 290, 223-24. The latter two findings in particular recognize that the silver was Betty's property—a final determination fatal to Aaron's current claim.

We recognize that Aaron's claim below advances a new argument that if there was a trust, it created nonprobate assets, the ownership of which would be unaffected by the operation of Donald's and Betty's wills—and he argues that the operation of those wills was the only subject matter of his claims in *Lowe* I and *Lowe* II. He argues that in *Lowe* I and *Lowe* II, he advanced *Donald's estate's* interest versus Betty's interest; with this action, he seeks to advance *Donald's trust's* interest versus Betty's interest.

Nonetheless, *Lowe* I finally resolved the *factual issue* that Betty owned and had the right to dispose of the silver coins and bars. And Donald's handwritten note was front and center as evidence in the parties' litigation over that ownership issue.

A decision of the United States Court of Appeals is instructive. In *In re Southeast Banking Corp.*, 69 F.3d 1539, 1552-53 (11th Cir. 1995), the bankruptcy trustee for a bank holding company was collaterally estopped from pursuing claims based on a prior determination that they belonged to the Federal Deposit Insurance Corporation (FDIC). After the bank was placed in receivership by the FDIC and filed for bankruptcy

9

protection, the bankruptcy trustee sued its former directors and officers. *Id.* at 1544. The

complaint was dismissed after the district court determined that the claims asserted were

primarily derivative claims, not direct claims, and under federal law, they belonged to the

FDIC as receiver and successor in interest to the shareholders of the holding company's

subsidiary bank. *Id.*

The bankruptcy trustee then filed a "Derivative Complaint" against virtually the

same defendants, although this time, the trustee asserted the claims on behalf of the

shareholders of the subsidiary bank. *Id.* at 1545. When the defendants asserted that the

trustee was collaterally estopped by the determination that the claims belonged to the

FDIC, the bankruptcy trustee responded that its position in the first action was that the

claims were the holding company's direct claims. The trustee argued it never took a

position on whether the right to assert derivative claims belonged to the FDIC. The

appellate court observed that the *defendants' position* was that the claims belonged to the

FDIC, and the trial court so found. It added:

> It appears the trustee may have, in the prior litigation, selected a litigation
> strategy he now regrets, placing all his eggs in the "direct, not derivative"
> basket. But his choice of that strategy will not prevent the application of
> collateral estoppel. *See* [JAMES WM. MOORE, ET AL., MOORE'S FEDERAL
> PRACTICE] ¶ 0.441[2], at 523 [2d ed. (1995)] ("If it has been determined in
> the former action, it is binding notwithstanding the parties litigant may have
> omitted to urge for or against it matters which, if urged, would have
> produced an opposite result.").

*Id.* at 1553 (second alteration in original).

Aaron was a party to *Lowe* I.[3] And barring relitigation does not work an injustice.

Washington case law on the injustice element is most firmly rooted in procedural

unfairness. *Thompson v. Dep't of Licensing*, 138 Wn.2d 783, 795, 982 P.2d 601 (1999).

Factors considered are the character of the prior court, the scope of its jurisdiction, its

procedural formality or informality, and procedural safeguards, including the right to

appeal. *State Farm Mut. Auto. Ins. Co. v. Avery*, 114 Wn. App. 299, 306-09, 57 P.3d 300

(2002). Both *Lowe* I and *Lowe* II were decisions of the superior court; in the case of

*Lowe* I, factual findings followed a four-day bench trial that took place over a year and a

half after Aaron filed his petition in February 2012.

Because summary judgment was appropriate on the basis of issue preclusion, we

need not address whether claim preclusion and RCW 11.68.110(2) also bar relitigation.

II.     ATTORNEY FEES AS SANCTIONS

Aaron and Mr. Kovacevich challenge the sanctions that the trial court imposed in

reliance on CR 11 and RCW 4.84.185. They raise 18 "issues" that we construe to be

---

[3] In addressing res judicata, Aaron argues that he now sues in a different capacity—as trustee of a trust. The first propositions Aaron sought to establish in filing his current complaint were that Donald's handwritten note created a trust and made him trustee. His complaint asks the court to make both determinations. Lonnie concedes neither proposition. Until and unless such determinations are made, Aaron is suing in his individual capacity, *seeking to be recognized* as a trustee.

11

their assignments of error. One category of issues challenges whether Aaron's claims

were so lacking in merit that CR 11 or RCW 4.84.185 applied (issues 1, 3, 5, 8, 11-18).

When a lawyer signs a court filing, CR 11(a) provides that the lawyer's signature

certifies that:

> [T]o the best of the . . . attorney's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances: (1) [the pleading] is well grounded in fact; (2) it is warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law or the establishment of new law; (3) it is not interposed for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation; and (4) the denials of factual contentions are warranted on the evidence or, if specifically so identified, are reasonably based on a lack of information or belief.

If a lawyer signs a pleading in violation of this rule, the court "may impose upon the

person who signed it, a represented party, or both, an appropriate sanction," which may

include an adversary's reasonable attorney fees. *Id.*

To impose CR 11 sanctions, the trial court must find: (1) the claim was without a

factual or legal basis, and (2) the attorney who signed the filing did not conduct a

reasonable inquiry into the factual and legal basis of the claim. *West v. Wash. Ass'n of

County Officials*, 162 Wn. App. 120, 135, 252 P.3d 406 (2011). Because CR 11

sanctions have a potential chilling effect, the trial court should impose sanctions only

when it is patently clear that a claim has absolutely no chance of success. *Lee v. Jasman*,

183 Wn. App. 27, 71, 332 P.3d 1106 (2014), *aff'd*, 183 Wn.2d 633, 354 P.3d 846 (2015)

(citing *Skimming v. Boxer*, 119 Wn. App. 748, 755, 82 P.3d 707 (2004)). The fact that a

12

complaint does not prevail on its merits is not enough. *Id.* (citing *Bldg. Indus. Ass'n of Wash. v. McCarthy*, 152 Wn. App. 720, 745, 218 P.3d 196 (2009)).

RCW 4.84.185 provides that in any civil action the court may, on written findings that the action was frivolous and advanced without reasonable cause, "require the nonprevailing party to pay the prevailing party the reasonable expenses, including fees of attorneys, incurred in opposing such action."[4] "In order for the court to award attorney fees under RCW 4.84.185, the lawsuit must be frivolous in its entirety and 'advanced without reasonable cause.'" *Alexander v. Sanford*, 181 Wn. App. 135, 184, 325 P.3d 341 (2014) (quoting *N. Coast Elec. Co. v. Selig*, 136 Wn. App. 636, 650, 151 P.3d 211 (2007)).

Sanctions imposed under CR 11 or RCW 4.84.185 are reviewed for an abuse of discretion. *State ex rel. Quick-Ruben v. Verharen*, 136 Wn.2d 888, 903, 969 P.2d 64 (1998) (CR 11); *Zink v. County of Mesa*, 137 Wn. App. 271, 275, 152 P.3d 1044 (2007) (RCW 4.84.185). "An abuse of discretion occurs only when the decision of the court is 'manifestly unreasonable, or exercised on untenable grounds, or for untenable reasons.'"

---

[4] For the first time in the reply brief, Mr. Kovacevich argues that as the lawyer in *Lowe* I and *Lowe* II, RCW 4.84.185 does not apply to him. Reply Br. of Pet'rs & Appellants at 3. While this appears to be correct, we will not entertain an argument that is raised for the first time in a reply. We also observe that the trial court's findings and conclusions based its sanctions equally on CR 11, which *does* apply to Mr. Kovacevich. Accordingly, whether RCW 4.84.185 applies makes no difference.

*State v. McCormick*, 166 Wn.2d 689, 706, 213 P.3d 32 (2009) (quoting *State ex rel.*

*Carroll v. Junker*, 79 Wn.2d 12, 26, 482 P.2d 775 (1971)).

Although all members of this panel agree that summary judgment was warranted,

we are not in total agreement on the reason why. We all agree that because assets

contributed to an inter vivos trust would pass independently of those disposed of by

Donald's and Betty Lowes' wills, the controlling character of *Lowe* I and *Lowe* II was not

crystal clear. Unquestionably, it would have been a better use of the resources of the

parties and the court if Aaron had been prepared to advance all of his theories at the first

trial. But we conclude that it would not have been obvious to any reasonable lawyer that

an action advancing the existence of a holographic trust would be barred by claim or

issue preclusion. We hold that the trial court abused its discretion in imposing sanctions

for the filing of the action below, and the core proceedings required to resolve Lonnie's

motion to dismiss it.

Sanctions may be warranted for some of the litigation conduct that followed. For

example, the CR 56(f) declaration filed after the trial court's letter opinion granting the

motion for summary judgment was filed at an improper time and for a purpose not

permitted by CR 56.[5]  On remand, Lonnie may narrow his request for attorney fees as

sanctions by excluding those attributable to Aaron's filing of the complaint and the core

proceedings necessary to obtain its dismissal.

Because the issue might arise on remand, we hold that apportionment of any fees

awarded is not required when sanctions are imposed jointly and severally against a client

and his lawyer.  When sanctions are imposed jointly and severally, the respective

amounts that the client and lawyer should bear is a matter to be resolved between them,

by negotiation or legal proceedings, but is not the concern of the court imposing the

sanctions.

---

[5] After the trial court announced its decision to dismiss Aaron's complaint and directed the parties to prepare and present findings and conclusions and any objections, Aaron filed a "CR 56(f) Declaration" requesting a continuance of the matter for 60 days "to permit discovery to be obtained."  CP at 55.  CR 56(f) permits a party to request continuance of a summary judgment hearing upon a demonstration that the party will otherwise be unable to present affidavits in opposition.  The trial court entered an order striking Aaron's declaration, which—coming after the court's decision on the motion— "was submitted too late to be considered."  CP at 61.  Aaron and Mr. Kovacevich argue that the trial court could grant or deny the requested continuance but was not permitted by CR 56 to strike the request.

Trial courts have the inherent authority to control and manage their calendars, proceedings, and parties.  *State v. Gassman*, 175 Wn.2d 208, 211, 283 P.3d 1113 (2012) (citing *Cowles Publ'g Co. v. Murphy*, 96 Wn.2d 584, 588, 637 P.2d 966 (1981)).  The Ninth Circuit Court of Appeals has held that a district court's inherent power to control its docket includes striking items from the docket as a sanction for litigation conduct. *Ready Transp., Inc. v. AAR Mfg., Inc.*, 627 F.3d 402, 404 (9th Cir. 2010).  The trial court had the inherent authority to strike improper submissions and we find no abuse of discretion in its order striking this one.

No. 35569-1-III (consol. with No. 35844-5-III)
*Lowe v. Lowe*

In arguing that allocation is required, Aaron and Mr. Kovacevich cite *Orwick v. Fox*, 65 Wn. App. 71, 92, 828 P.2d 12 (1992), but that case is distinguishable. In that case, the defendants were awarded reasonable attorney fees as sanctions against two plaintiffs and the plaintiffs' lawyer. The liability of the clients was to be several only. The defendants were required to segregate their fees so that one client would not be required to pay fees incurred in responding to the claim of the other client.

We affirm dismissal of the complaint and remand for proceedings consistent with this opinion.

A majority of the panel has determined this opinion will not be printed in the Washington Appellate Reports, but it will be filed for public record pursuant to RCW 2.06.040.

Siddoway, J.

I CONCUR:

Pennell, J.

16

No. 35569-1-III
(consolidated with
No. 35844-5-III)

LAWRENCE-BERREY, C.J. (concurring in result) — The majority reaches the

correct result. It affirms the trial court's dismissal of Aaron Lowe's holographic trust

claim, but reverses CR 11 sanctions imposed against him. I disagree with the majority's

application of collateral estoppel and write separately.

The party asserting collateral estoppel carries the burden of showing the issue in

the first proceeding was identical to the issue in the subsequent proceeding. Philip A.

Trautman, *Claim and Issue Preclusion in Civil Litigation in Washington*, 60 WASH. L.

REV. 805, 831-32 (1985). Collateral estoppel requires the issue to have been actually

litigated in the prior proceeding and for the issue to have been material and essential in

the prior controversy. *Id.* at 833. "Collateral estoppel should not be applied to an issue

which was only tangential to a substantial issue in the prior litigation." *Barr v. Day*, 69

Wn. App. 833, 843, 854 P.2d 642 (1993), *aff'd in part and rev'd in part on other grounds

by*, 124 Wn.2d 318, 879 P.2d 912 (1994). "'[C]ollateral estoppel extends only to

"ultimate facts", *i.e.*, those facts directly at issue in the first controversy upon which the

claim rests, and not to "evidentiary facts" which are merely collateral to the original

claim.'" *Barr*, 124 Wn.2d at 325 (alterations in original). "If a verdict or judgment is

ambiguous or indefinite, or if there is uncertainty as to whether an issue was previously

litigated, collateral estoppel will not be applied to that issue." Trautman, 60 WASH. L.

REV. at 833 (citing *Mead v. Park Place Props.*, 37 Wn. App. 403, 407, 681 P.2d 256 (1984)); *see also LeMond v. Dep't of Licensing*, 143 Wn. App. 797, 180 P.3d 829 (2008).

In *In re Estate of Lowe*, 191 Wn. App. 216, 361 P.3d 789 (2015) (*Lowe* I), the issues raised for trial were: (1) whether Betty's will was valid, (2) whether Betty's pre-death gifts to Lonnie were proper, (3) whether Lonnie financially abused Betty, and, (4) whether to remove Lonnie as personal representative of Betty's estate. The issue of whether Donald's letter to his sons constituted a holographic trust was never raised, litigated, or decided. Therefore, Aaron was not collaterally estopped from raising that issue here.

But I would reach the same result as the majority by applying res judicata. "Res judicata—or claim preclusion—applies where a final judgment previously entered and a present action are so similar that the current claims should have been litigated in the former action." *Storti v. Univ. of Wash.*, 181 Wn.2d 28, 40, 330 P.3d 159 (2014). Decisions, beginning in the 1980s, have confusingly stated that "res judicata applies only where the current and prior case involve identical causes of action." *Id.* The first statement broadly describing res judicata cannot be squared with the second, narrower statement. It is this confusion in the law that warrants denial of CR 11 sanctions here.

*Storti* emphasizes, "res judicata promotes judicial economy, efficiency, and fairness to litigants." *Id.* But under *Storti*'s second statement describing res judicata, one may continually assert *different* causes of action in a continuity of lawsuits and not run afoul of res judicata. This hardly promotes judicial economy and efficiency.

2

*Storti*'s first statement describing the breadth of res judicata is correct and aligns with historical statements of the doctrine. But until the Supreme Court disavows the notion that res judicata requires identical causes of action between cases, litigants are free to file a continuity of lawsuits asserting different causes of action without fear of CR 11 sanctions.

Lawrence-Berrey, C.J.